CLARENCE M. BUSCH, appellant,

*v.*

MARY A. RIDDLE COMPANY, respondent.

[Decided October 21st, 1920.]

On appeal from a decree of the court of chancery advised by Vice-Chancellor Leaming, who filed the following opinion:

"I find no difficulties in this suit arising from the jurisdictional questions suggested by the defensive pleadings; to the effect that the relief sought by complainant invades the rule that the courts of this state will not interfere with the internal affairs of a foreign corporation. Obviously, it is in no sense an interference with the internal affairs of the Mary A. Riddle Company of Pennsylvania for this court to permit that corporation to maintain in this state a suit to recover from an officer of that corporation, who is a resident of this state, the value of assets of that corporation which the officer has appropriated to his own use in violation of his trust duties to the corporation. The additional circumstance that this suit has been instituted by a stockholder of the Pennsylvania corporation for the benefit of, and in the right of, that corporation in no way enters into the inherent nature of the suit. The suit is based upon a cause of action resting wholly in the corporation; the stockholder complainant does no more than set in motion and contribute to the prosecution of a suit for the benefit of the corporation which otherwise could not be properly prosecuted. In that manner there is fostered the undoubted privilege of the corporation to sue in the state of the residence of the defendant from whom recovery is sought. The only element of management on the part of the managing officers which is interfered with is to be found in the circumstance that they do not authorize, institute or wholly control the suit. But where the recovery is sought in

behalf of the corporation from its managing officers no such right exists on their part as managing officers, since they are necessarily disqualified from acting in such circumstances. That disqualification is everywhere recognized and is operative to confer upon a stockholder the right to act in behalf of the corporation. See *Sloan* v. *Clarkson, 105 Md. 171; Loan Society of Philadelphia* v. *Eavenson, 241 Pa. St. 65; Corry* v. *Barre Granite Co. (Vt.), 101 Atl. Rep. 38; Atwater* v. *Baskerville (Court of Chancery), 89 N. J. Eq. 121, 136; S. C. on appeal, 90 N. J. Eq. 275; Jackson* v. *Hooper, 76 N. J. Eq. 592,* in no way conflict with the views herein expressed. All this is, indeed, now conceded in the brief which has been filed by the counsel for the several defendants.

"But the right of complainant to require in this suit an accounting from an officer of the Mary A. Riddle Company of New Jersey for the value of assets of the New Jersey corporation which that officer may have misappropriated is by no means clear.

"Complainant is not a stockholder of the New Jersey corporation. He is a transferee of the Kuehnle stock of the Pennsylvania corporation. It may be that if a sale and assignment had been made by the New Jersey company to the Pennsylvania company, which by its terms could be said to include a transfer to the Pennsylvania company of assets of the New Jersey company of the nature of those now claimed—that is, money that then may have been due to the New Jersey company by reason of then unknown tortious conduct of an officer of the New Jersey company, such assets could be recovered by the Pennsylvania company in this suit from the tort-feasor by reason of the assignment. But whether, in such circumstances, an action could be so maintained, I think it unnecessary to here consider, since no assignment of the nature suggested has been deposited with me as an exhibit, and I have no recollection that any such assignment was offered in evidence. There is before me, however, the agreement between these two corporations under date of August 1st, 1912, in which the terms of the sale are specifically stated and agreed upon. That agreement recites that the vendor, the New Jersey corporation, is the owner of the property and

rights thereinafter described, that the vendee, the Pennsylvania corporation, has an authorized capital stock of $100,000; that the vendee has ascertained, adjudged and declared the said property and property rights of vendor to be of the fair value of $214,943.70, and that the acquisition thereof is necessary for the business of the vendee; the agreement then stipulates that the vendor has sold, assigned and transferred and set over, and does thereby sell, assign, transfer and set over to the vendee all its right, title and interest in the therein described property; then follows a specific description of certain tracts of real estate, each described as subject to specified encumbrances, and also certain shares of capital stock in a specified insurance company; the vendee then agrees in consideration of the sale to it of the property so described to issue to the vendor or its nominees, as thereinafter provided, its promissory note for $119,943.70, payable on demand, and certificates of capital stock of the vendee to the amount of nine hundred and fifty shares, as fully paid stock; then follows the names of the several persons to whom the stock is to be issued, including two hundred and fifty shares to Mr. Kuehnle. These two hundred and fifty shares are now held by complainant by assignment from Mr. Kuehnle, and by virtue of that assignment this suit has been brought.

"With that agreement accepted as the basis of the sale, it seems impossible to conclude that the Pennsylvania company either contracted for or paid for any rights of the New Jersey company in the nature of obligations of any of the officers of the New Jersey company to it arising from their tortious conduct in its management. The agreement is entirely specific in its terms as to the property to be sold and paid for. To enable the Pennsylvania company to recover assets not contemplated by the agreement would be operative to bestow upon it assets neither purchased nor paid for. If, therefore, the Pennsylvania company has received the assets which it purchased, and defendant, Riddle, as an officer of the New Jersey company, is indebted for peculations from that company of the nature charged, it would follow that recovery from him cannot be had in this suit. The circumstance that the New Jersey company has been dissolved by proclamation of the governor for non-pay-

ment of taxes appears to present no insurmountable obstacle to recovery; that proclamation is in no way operative to discharge debtors of the proclaimed corporation. But it seems to me impossible to measure the consequences of the transfer of the enumerated assets by the broader assumption that it was intended to convey any undisclosed assets of the New Jersey corporation, since that intent is materially inconsistent with the terms of the agreement of sale; the consideration paid was capital stock of Pennsylvania corporation in amount equal to the stock of the New Jersey corporation, and, in addition thereto, a note of the vendee for a specific amount, which aggregate amount was by the very terms of the contract based upon an appraised value of the specific assets enumerated as purchased.

"The method adopted in issuing the stock to the stockholders of the New Jersey corporation was apparently irregular, although assented to by all the stockholders of the New Jersey corporation, since the consideration for the sale should have passed directly to the New Jersey corporation. Whether, in a suit for the specific purpose, a trust in favor of the New Jersey corporation could be impressed upon the stock so issued, I am not at liberty to here inquire. But complainant is, in fact, the holder of specific shares of capital stock of the Pennsylvania corporation, and is not, in fact, the holder of stock of the New Jersey corporation; as a stockholder of the Pennsylvania corporation complainant is entitled to initiate this litigation for recovery by the Pennsylvania corporation of the value of assets of that corporation misappropriated by its trust officers. If, as it is claimed, prior to the transfer of assets, Mr. Riddle was guilty of fraudulent misrepresentations to or concealments from Mr. Kuehnle resulting in pecuniary loss to the latter, his right of recovery for such loss appears to me to be a purely personal right and enforceable as such.

"These views necessarily limit any recovery herein to the period of operations of the Pennsylvania corporation.

"A further objection is urged against the enforcement of an accounting by an officer of the New Jersey corporation based upon the long period of time that has expired since the transactions occurred for which liability is claimed, and also based

upon a settlement of the affairs of that corporation made at the time of the transfer of assets and apparently assented to by all stockholders of that corporation. These transactions during the operations of the New Jersey corporation for which liability is now asserted extend to, and even prior to, the year 1903. The great difficulty and uncertainty in any endeavor to ascertain the facts touching these transactions occasioned by the lapse of time is manifest by the testimony given at the hearing touching them. It may well be doubted whether in a suit of this nature it would be equitable to enforce an accounting during the period antedating the settlement of December 31st, 1911. But transactions since that date, and especially those since the transfer of assets, have been more formally conducted with books of account purporting to accurately portray all financial transactions, and no insurmountable difficulties should be encountered in the procurement of adequate explanation of any matters which may be questioned.

"The primary difficulties in this case arise from the fact that all of the stock of the New Jersey corporation, and after the transfer of assets, practically all of the stock of the Pennsylvania corporation was owned or controlled by defendant, Riddle, and Louis Kuehnle, and through confidence reposed by Mr. Kuehnle in Mr. Riddle, the latter was allowed to operate these corporations practically without restraint and with inappropriate regard to their existence as corporate entities, defendant, Riddle, during much of the time merely charging himself personally with moneys received and crediting himself with money paid; this was further complicated in the operations prior to the transfer to the Pennsylvania corporation by numerous personal financial transactions between the two men by way of mutual accommodation. Until 1912 the New Jersey corporation was regarded by these two men as their own, and defendant, Riddle, was entrusted with the management with practically no participation or supervision by Mr. Kuehnle.

"A written settlement of accounts was made between Mr. Riddle and Mr. Kuehnle up to January 1st, 1912; January 12th, 1912, a written agreement was made between them touching the transfer of assets to the Pennsylvania corporation. The

latter agreement contemplated the transfer to the Pennsylvania corporation of the assets therein specified for stock of the corporation in equal amount to the stock of the New Jersey corporation, of which stock Mr. Kuehnle was to have one-fourth, and also for a note of the Pennsylvania corporation for a specified amount, with interest from January 1st, 1912; in the agreement Mr. Kuehnle transferred to defendant, Riddle, his one-fourth interest in that contemplated note in consideration of defendant, Riddle, assuming payment of certain obligations of the New Jersey corporation, for which the two were jointly liable; the stated accounts between them of January 1st, 1912, were by the latter agreement also expressly confirmed.

"It is obvious that these two stockholders, though owning practically all the stock, could not, consistently with the provisions of our statutes, divide between them the assets of the New Jersey corporation in that manner. The agreement may, however, be appropriately regarded as an attempt of the two stockholders to determine upon the ultimate results to be worked out. The plan defined in the agreement was accomplished as follows: A special meeting of the stockholders of the New Jersey corporation was held August 1st, 1912. This meeting appears to have been regularly convened and all stock was represented. At that meeting a resolution was adopted authorizing the directors to enter into a contract with the Pennsylvania company to sell the latter company all the assets, subject to existing encumbrances, for $214,943.70, that amount to be paid by the delivery of a demand note of the Pennsylvania company for $119,943.70, and the balance of $95,000 to be paid by the issue of that amount of fully paid capital stock of the Pennsylvania company; the resolution further provided that the note should be transferred and delivered to defendant, Riddle, as his individual property in consideration of his assumption of all unsecured debts, liabilities and obligations of the New Jersey corporation; and that the stock be issued and delivered to the persons and in amounts specifically named. The apportionment of stock so named is the same as the corresponding amount of stock then held by the same persons in the New Jersey corporation.

"On the same date a directors' meeting was held directing the execution of the agreement in accordance with the authorization of the stockholders' meeting, and declaring the consideration to be paid for the property to be its fair value; also setting forth that the proposed contract presented to the meeting was approved as to form and ordered executed; also that the note for $119,943.70 be transferred and delivered to defendant, Riddle, as his individual property in consideration of his execution and delivery to the company of a written assumption of all unsecured debts, liabilities and obligations of the New Jersey company; also directing the stock to be issued and delivered in the manner set forth in the resolution of the stockholders' meeting and in the submitted proposed contract. That contract, executed under date of August 1st, 1912, has been already referred to and summarized.

"I am unable to discern any legal obstacle in the authorization by the New Jersey corporation for the delivery of the note to defendant, Riddle, in consideration of the payment by him of debts of the New Jersey corporation to the amount of the note. The authorization by the New Jersey corporation for the delivery of the stock to the several·stockholders of the New Jersey corporation encounters the legal obstacle that the stock, as a part of the consideration of the sale, should have passed to the New Jersey corporation as such and not to its several stockholders. But, as already suggested, the stock was issued by the Pennsylvania corporation, as vendee, in the manner directed by the New Jersey corporation, as vendor, and the several holders of that stock have been ever since recognized by the Pennsylvania corporation as its stockholders; complainant is assignee of the shares so issued to Kuehnle, and as such is entitled to enforce restoration to the Pennsylvania corporation of the value of any assets that may have been wrongfully diverted by its trust officers.

"The transfer of assets to the Pennsylvania company was consummated August 1st, 1912, and the books of account of that corporation were opened on that date. I shall, accordingly, give consideration in this case only to claims for liability upon the part of defendant, Riddle, as an officer of the Pennsylvania cor-

poration arising from transactions subsequent to August 1st, 1912. The item of the $22,500 note, hereinafter considered, had its origin prior to that date; but no substantial dispute touching that item exists except as to matters occurring subsequent to August 1st, 1912.

"In the testimony taken before me at final hearing all parties were given the fullest opportunity to present all available evidence touching the several matters charged in the bill; the issues of fact were specific, and the testimony touching each issue was voluminous and apparently as exhaustive as either party desired. In such circumstances, and especially under a bill of this nature, I think a general reference to a master unnecessary and improper. I shall, accordingly, undertake to finally dispose of the various charges made, except as to one item hereinafter referred to.

"1. In June, 1917, defendant, Riddle, was allowed a credit of $56,589.86 for expenditures made by him in the erection of the Knife and Fork inn. It is established that $20,000 of the money expended by Mr. Riddle for the purpose named was paid by him from the proceeds of a mortgage on the property and not from Mr. Riddle's money. The accountant of Mr. Riddle now concedes the error and attributes the error to himself. The credit was further excessive, in that the account of expenditures, which was made the basis of the credit, included compound interest, calculated yearly, on the several items. Mr. Riddle must accordingly be charged with $20,000, and such interest as was charged on that amount, and also charged in addition with the amount that the compound interest exceeds simple interest on the actual expenditures from his money. Since a typewritten statement of the account exists, the exact aggregate charge now to be made against Mr. Riddle is a mere matter of calculation. If counsel cannot agree upon the calculation it may go to a master.

"2. I am satisfied that the sale of the Pennsylvania avenue property, in March, 1916, was in fact for $7,500 and one year's rental of the Albany avenue house occupied by Mr Riddle. That year's rental Mr. Riddle should be charged with, with interest. I think $1,500 the reasonable rental value to be charged

under the circumstances. I am convinced that the entries on the books of account do not adequately portray the actual pecuniary transaction.

"3. The claim of unpaid rental for the Albany avenue house from December 31st, 1911, to August 1st, 1912, cannot be here considered under the view herein adopted touching the period for which complainant is privileged to recover in this suit.

"4. The claim for recovery of overpaid salary and commissions is also prior to August 1st, 1912, and is not here considered for that reason.

"5. I am convinced that Mr. Riddle cannot be properly charged with penalties incurred through failure to pay taxes when due. In the absence of evidence of a sinister purpose any liability of that nature would be necessarily based upon errors of judgment. It seems impossible to conclude that the owner of three-fourths of the stock of a corporation would permit tax penalties to accumulate in the absence of what he believed to be reasonable necessities of the situation, and the ascertainment of gross error of judgment in that respect would necessarily involve an almost impossible consideration of practically all the interrelated affairs of the corporation.

"6. The claim for $1,839.70 as error in cash in the statement from January 1st, 1912, to August 1st, 1912, falls within the field of claims herein excluded in this suit because arising prior to the sale of assets to the Pennsylvania corporation.

"7. In January, 1914, defendant, Riddle, purchased from the Pennsylvania company fifty $1,000 bonds of that company at par. In July, 1915, he sold to that company forty-three of the bonds so purchased at an increased price of $50 per bond, and in September, 1915, sold to the company the remaining seven bonds at the same price; the bond transaction, accordingly, afforded him a profit of $2,500. These same fifty bonds were sold by the company in December, 1915, for $900 a bond; the company thus sold them for $7,500 less than had been paid for them in the preceding July and September. It is defensively claimed that the company was in possession of ample funds in July, 1915, and could then advantageously purchase these bonds at their redemption price of five per cent. in excess of their

principal; that a fire occurred in August, 1915, which not only occasioned heavy loss to the company but necessitated funds for rebuilding purposes, and that these changed conditions made it necessary for the company to sell the bonds in the following December at the reduced price. But that explanation, however forceful it may be, in no way accounts for the sale to the company of seven of the bonds a month after the fire at the maximum rate referred to. Mr. Riddle suggested that the record on the books disclosing a sale of the seven bonds after the fire was a mistake in bookkeeping; but no demonstration of error was made.

"It is entirely clear that the relations of defendant, Riddle, to the Pennsylvania company was such that the law of this state did not permit him to enjoy the fruits of a contract with the corporation he represented against the will of his *cestui que trust* exercised within a reasonable time. *Stewart* v. *Lehigh Valley Railroad Co., 38 N. J. Law 505, 522,* is conclusive to that effect, and the doctrine there stated has since been uniformly recognized and repeatedly enforced in this state. The contractual profits enjoyed by Mr. Riddle through the purchase and subsequent sale of the bonds were $2,500. That amount must be returned by him to the company, with interest, unless it be found that the contracts have been intelligently ratified by a stockholders' meeting or that the present assertion of the claim has not been made within a reasonable time. I am convinced that neither of these essentially equitable limitations upon the rights of rescission and restitution are to be found in this case. Inaction upon the part of the company and its stockholders was an inevitable resultant of Mr. Riddle's practically unrestrained management of its affairs and the confidence reposed in him. If, indeed, the sale to the company was known by Mr. Kuehnle his confidence disarmed anything like adequate comprehension of the detailed facts, and no evidence discloses that Mr. Kuehnle at any time knew that the sale was made at a profit to Mr. Riddle. The profit to Mr. Riddle was $2,500, and that amount, and not $7,500, as claimed, measures his liability in that transaction.

"8. I am unable to conclude that there was any irregularity in the exchange of property with Senator Edge other than the rent item already referred to.

"9 and 10. The claims touching the O'Niel mortgage, the $5,000 paid to Tona Cella and the $4,000 incidental fund are for matters prior to August, 1912, and are also formally waived in complainant's brief.

"11. I am satisfied that no recovery can be supported based upon the claim of liability for uncollected rent from Cella.

"12 and 13. The apparently duplicate charge of $10,000 for the Bacon mortgage, and the claim touching the payment of loan to Atlantic Safe Deposit and Trust Company, both antedate the period of present inquiry.

"14. December 31st, 1913, defendant, Riddle, was credited with having paid a note or notes of the Pennsylvania company, amounting to $22,500, as principal, and $1,942.50 as interest. It is claimed by complainant that the obligation of the company there referred to was represented by a certain note of $22,-500, which note had been theretofore fully paid and discharged by money of the company. If that be true the credit to Mr. Riddle of December 31st, 1913, must be eliminated.

"A great amount of testimony has been taken touching this $22,500 item, and the field of dispute has been reduced to a very small compass. The testimony fully establishes, as facts beyond the field of dispute, that prior to September, 1911, the New Jersey company was indebted to the Real Estate and Trust Company of Philadelphia to the amount of $15,000, that amount then remaining due as the unpaid balance of a former loan secured by mortgage. On that date $22,500 additional money was borrowed from that trust company on a note, making the total indebtedness $37,500. This situation existed at the end of 1911, when Mr. Riddle and Mr. Kuehnle made their written settlement in contemplation of making the transfer of assets of the New Jersey corporation to the Pennsylvania corporation. That transfer was not consummated until August 1st, 1912, and at that transfer the transactions of the New Jersey corporation covering the intervening period were taken into account, and the books of account of the Pennsylvania corporation were

opened on that date and were made to carry as a liability the note above referred to of $22,500, payable to the Real Estate and Trust Company. That was clearly an error, since the note of $22,500 had been theretofore paid off and fully discharged. The note was paid off by a new loan being made by the Real Estate and Trust Company for $50,000, and out of that new loan the $22,500 note and the $15,000 mortgage balance were deducted and the remainder, $12,500, was paid to Mr. Riddle, and by him credited on the cash statement covering the period already referred to. All this was ultimately conceded at the hearing. The only remaining inquiry is whether the payment to Mr. Riddle of $22,500, with interest, on December 31st, 1913, was in payment of that old extinguished note or was in payment of some real obligation.

"In view of the erroneous listing of this extinguished $22,500 note as an obligation, and the manifest indications that the payment to Mr. Riddle on December 31st, 1913, may have been of that extinguished obligation, the burden is clearly imposed upon Mr. Riddle to satisfactorily establish as a fact not only that the payment was not of the old note, but what it was for. This has not been done. But in view of the elapsed time, and the statements of Miss Palmer that the payment now in question was of two notes aggregating $22,500, and not of the old note referred to, I think Mr. Riddle should be privileged to further endeavor to establish that fact if he can do so. I will, accordingly, order a reference to a master to report whether such evidence as may be taken before him adequately established that the payment of December 31st, 1912, was not of the extinguished $22,500 note, and also adequately establishes what the payment was in fact for, and that it was for a valid obligation of the Pennsylvania corporation. Upon that report coming in I will determine upon the allowance of this claim.

"15. The charge of improper allowance for discounts paid antedates the period of present investigation."

*Mr. Frank Smathers,* for the appellant.

*Mr. Clarence L. Cole,* for the respondent.

PER CURIAM.

The decree appealed from will be affirmed, for the reasons stated in the opinion filed in the court below by Vice-Chancellor Leaming.

*For affirmance*—THE CHIEF-JUSTICE, SWAYZE, TRENCHARD, BERGEN, MINTURN, KALISCH, BLACK, KATZENBACH, WHITE, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER, ACKERSON—14.

*For reversal*—None.