STATE OF IOWA ex rel. J. B. WEEDE, Appellant, v. IOWA SOUTH-
ERN UTILITIES COMPANY OF DELAWARE et al., Appellees;
ILA FAYE THATCHER et al., Interveners, Appellees.

No. 45458.

FEBRUARY 10, 1942.

OPINION MODIFIED AND REHEARING DENIED AUGUST 11, 1942.

Havner, Flick & Powers, Margaret I. Cunningham, and V. H. Morgan, for appellant.

Bradshaw, Fowler, Proctor & Fairgrave, Valentine & Valentine, and Cross & Hamill, for appellee Iowa Southern Utilities Company of Delaware.

Burke N. Carson, for appellee Celia Carson, Executrix and Trustee of the Estate of George S. Carson, deceased.

Lane & Waterman, for appellee Davenport Bank & Trust Company, Trustee under the will of George S. Carson, deceased.

Clark, Pryor, Hale & Plock, for appellees Ila Faye Thatcher and Nancy Rosseau.

Cross & Hamill, for appellees Martha R. Bechtel, George M. Bechtel, Harold R. Bechtel, Edward L. Shutts, H. W. Deininger, D. D. Bentzinger, M. G. Stover, Charles Westbrook, and Elery Scott.

BLISS, C. J.—The trial court found that the suit, as pleaded in the petition, could not be maintained, and, without specifying which of the eighteen grounds of the motion to dismiss it based its ruling upon, sustained the motion generally. The facts of the case must, therefore, be ascertained solely from the petition. Before attempting to set out a fairly complete summary of the pleaded facts and the grounds of the motion, a brief foreword of the nature of the suit, as gathered from the petition, may be helpful.

The defendant, Iowa Southern Utilities Company of Delaware, was first organized as the Centerville Light and Traction Company, under the laws of Maine, in December, 1916. An amendment to its Articles, filed about February 12, 1923, changed the original name of the company to "Iowa Southern Utilities Company of Maine." Later the corporation was reorganized under the laws of Delaware as the Iowa Southern

Utilities Company of Delaware. The corporation has at all times been engaged in the business of a public utility in Iowa, with its principal place of business at Centerville, Iowa, and with all of its property, except some of its bank accounts, located in said state. The defendants, other than the Utilities Company, are all residents of Iowa, and are stockholders, directors and officers of the company, and include the president, vice president, chairman of the board of directors, and secretary of the company.

The relator, J. B. Weede, is a citizen of Iowa. In his petition, filed November 29, 1939, he alleged in substance that the Company had violated the provisions of chapter 387 of the Code of Iowa by issuing a large part of its capital stock for something other than money, without the approval of the Executive Council of the State, without receiving par value therefor, and without filing certificates of the issuance of such stock with the Secretary of State, setting out the details of the transactions, and what was received for the stock. Because of these violations of the statute, he alleged that the stock so issued is void, and the holders thereof have no lawful right to exercise the powers of, nor to receive the benefits of, shareholders, and that certain pretended corporate actions amending the Articles of Incorporation providing for a substitution of stock issues, and for a plan of recapitalization were illegal and of no force and effect. He prayed for a decree declaring which stock was valid and which was invalid, for an order restraining defendants from further executing their unlawful plans, and for a receiver for the Company.

As we have stated, the suit is based upon certain statutory provisions, a knowledge of which is necessary for a proper understanding of the case.

Chapter 387 of the Code first appeared as Chapter 136 of the Laws of the 35th General Assembly (Senate File 119). Section 8433 of the 1924 and subsequent Codes was section 1641-l of the 1913 Code Supplement. In the Codes of 1935 and 1939, section 8433 is as follows:

"Capital stock and permit. Sections 8412 to 8416, inclusive, and 8420 to 8428, inclusive, are hereby made applicable

to any foreign corporation which directly or indirectly owns, uses, operates, controls, or is concerned in the operation of any public gasworks, electric light plant, heating plant, waterworks, interurban or street railway located within the state, or the carrying on of any gas, electric light, electric power, heating business, waterworks, interurban or street railway business within the state, or that owns or controls, directly or indirectly, any of the capital stock of any corporation which owns, uses, operates or is concerned in the operation of any public gasworks, electric light plant, electric power plant, heating plant, waterworks, interurban or street railway located within the state, or any foreign corporation that exercises any control in any way or in any manner over any of said works, plants, interurban or street railways or the business carried on by said works, plants, interurban or street railways by or through the ownership of the capital stock of any corporation or corporations or in any other manner whatsoever, and the ownership, operation, or control of any such works, plants, interurban or street railways or the business carried on by any of such works or plants or the ownership or control of the capital stock in any corporation owning or operating any of such works, plants, interurban or street railways by any foreign corporation in violation of the provisions of this chapter is hereby declared to be unlawful.''

Sections 8412 to 8416, referred to in the section, provide in substance as follows: Section 8412. No corporation organized under the laws of the state, except building and loan associations, shall issue any share of capital stock until the corporation has received par therefor. Section 8413. If payment in anything other than money is proposed, permission to accept it must be obtained from the Executive Council, upon application setting out the facts of the proposition. Section 8414. The Executive Council, after investigation, shall fix the value of the property and the amount of the issue. Section 8415 provides what factors may be considered by the council in arriving at values. Section 8416 states:

"It shall be the duty of every corporation, (except corporations qualified under chapter 386 or chapter 417), to file a certificate under oath with the secretary of state, within ten days after the issuance of any capital stock, stating the date of issue, the amount issued, the sum received therefor, if payment be made in money, or the property or thing taken, if such be the method of payment." (Parentheses supplied.)

The words included in the parentheses were inserted in the section by an Act of the 43d General Assembly, chapters 14, 15, section 1, effective July 4, 1929. This is to be kept in mind because the appellee contends that by reason of the amendment it was thereafter not required to file certificates of stock issues.

Sections 8420 to 8428, referred to in section 8433, have to do with the application of a foreign corporation for a permit to transact business in Iowa, and what must be done to procure such permit, and other matters incident thereto.

Section 8434 provides:

"Holding companies. The provisions of this chapter are hereby made applicable to all corporations, including so-called 'holding companies' which by or through the ownership of the capital stock in any other corporation or corporations or a series of corporations owning or controlling the capital stock of each other can or may exercise control over the capital stock of any corporation which owns, uses, operates, or is concerned in the operation of any public gasworks, electric light plant, electric power plant, heating plant, waterworks, interurban or street railway located in the state, or the business carried on by such works or plants."

Section 8435 provides that all corporations within the purview of the chapter shall pay annual fees, and make annual reports as provided in chapter 388.

The provisions of the remaining sections of chapter 387 are as follows:

"8436 Sale of capital stock. The provisions of this chapter are hereby made applicable to the sale of its own capital stock by any corporation subject to the provisions of this chapter, whether said capital stock has been heretofore

issued by said corporation or not, including the sale of so-called 'treasury stock' or stock of the corporation in the hands of a trustee or where the corporation participates in any way or manner in the benefits of said sales, and also to the sale of any of the obligations of any corporation subject to the provisions of this chapter, the payment of which is secured by the deposit or pledge of any of the capital stock of said corporation.

"8437 Violations—stock void. Shares of capital stock of any corporation owned or controlled in violation of the provisions of this chapter shall be void and the holder thereof shall not be entitled to exercise the powers of a shareholder of said corporation or permitted to participate in or be entitled to any of the benefits accruing to shareholders of said corporation, and sections 8430 to 8432, inclusive, are hereby made applicable to violations of the provisions of this chapter; and courts and juries shall construe this chapter so as to prevent evasion and to accomplish the intents and purposes thereof.

"8438 Dissolution—receiver. Courts of equity shall have full power to dissolve, close up, or dispose of any business or property owned, operated, or controlled in violation of the provisions of this chapter; to dissolve any corporation owning or controlling the capital stock of any other corporation in violation of the provisions of this chapter and to close up or dispose of the business or property of said corporation; and if the court finds that, in order to carry out the purposes of this chapter, it is necessary so to do, it may dissolve the corporation issuing the stock which is owned in violation of the provisions of this chapter, close up the business of said corporation and dispose of its property, and the court may also appoint a receiver who shall be a resident of Iowa for any business or for any corporation which has violated the provisions thereof or of the corporation issuing the stock which is held in violation thereof. Any action to enforce the provisions of this chapter may be instituted by the attorney general in the name of the state of Iowa or by a citizen in the name of the state of Iowa at his own proper

cost and expense, reserving, however, to the stockholders owning capital stock not held in violation of this chapter all rights possessed by them.''

Sections 8430 and 8431 made applicable by section 8437 provide for penalties upon the corporation, or its officers, who shall do business in the state without a permit. Section 8432, also made applicable by section 8437, is as follows:

''Status of corporation and officers. Nothing contained in this chapter shall relieve any person, company, corporation, association, or partnership from the performance of any duty or obligation now enjoined upon or required of it, or from the payment of any penalty or liability created by the statutes heretofore in force, and all foreign corporations, and the officers and agents thereof, doing business in this state shall be subject to all the liabilities, restrictions and duties that are or may be imposed upon corporations of like character organized under the general laws of this state, and shall have no other or greater powers.''

Plaintiff's petition, as it stood after the ruling on the motion to strike, in addition to the factual matters already stated, herein alleged: The substance of the provisions of chapter 387; the Company, by action of its board of directors, about March 16, 1923, adopted this resolution, to wit: ''RESOLVED, that a certified copy of the articles of incorporation of this company be filed with the Secretary of the State of the State of Iowa, with a request that a certificate be issued authorizing this company to transact business in the State of Iowa, it being understood and hereby agreed that the certificate or permit, when issued, shall be subject to, and subject this company to, all the provisions of the statutes of Iowa relating to corporations for pecuniary profit.''; that a permit to transact business in Iowa was issued about March 26, 1923, and since said date the company has continued to operate its general utility business in Iowa under said permit; that the total outstanding stock of the company, as a Maine corporation, was $580,000 of preferred stock and $481,200 of common stock, all of the par value of $100 per share; the defendant company was incorporated as a Delaware

corporation about February 12, 1923, and about March 12, 1923, filed an application for an appraisal and for authority to issue stock in payment for property, in which application it stated it sought to issue stock in the amount of $1,160,800 in exchange for the assets of the Maine corporation, and that it had an authorized capital of five million dollars of preferred stock of $100 par value, per share, and fifty thousand shares of common stock, but failed to state in its application that the fifty thousand shares of common stock authorized, and which it proposed to issue, were without par value; said application stated: "Your petitioner desires authority to issue stock in the amount of $1,160,800.00, being the same amount of stock as is now outstanding of the Iowa Southern Utilities Company of Maine; the intention being that the new corporation shall own all the property and assets of the old corporation, assume all of its obligations and have outstanding the same stock as the old corporation."; said application was approved on March 27, 1923, by the Executive Council, but the defendant company did not take over all the property and assets of the old corporation and assume all its obligations, and have outstanding the same stock as the old corporation, in accordance with the application, but the old Maine corporation continued to operate as an independent corporation until May 27, 1927, and filed annual reports for the years 1923, 1924 and 1925; that about September 28, 1924, the defendant company submitted a second application for appraisal and for authority to issue stock in payment of property, alleging it had an authorized capital stock of $10,000,-000 of par value of $100 per share, which was an intentional misrepresentation to the Executive Council, since it had only a five million dollar preferred capital stock of the par value of $100 per share, and fifty thousand shares of common stock with no par value; that said application was approved about September 30, 1924, and the company was authorized to issue $1,520,000 of capital stock in payment for property; by authority of the two applications, the defendant company was authorized to issue stock in payment for property in the sum of $2,680,000, and that no other applications have been made to the Council for authority to issue stock for property; the de-

fendant commenced issuing stock for property about May 29, 1923, and continued to do so until August 20, 1925, at which time it had issued $3,319,300 of capital stock in payment for property, or $638,500 of capital stock for property in excess of that authorized; that about December 17, 1923, and about February 14, 1924, and about January 15, 1925, the defendant company, respectively, filed with the Secretary of State certificate as to the issuance of 826 shares of preferred stock and 5,000 shares of common stock, reporting the total value to be $582,600, and certificate as to the issuance of 54 shares of preferred stock and 800 shares of common stock, representing the total par value of said stock at $85,400, and certificate as to the issuance of 4,200 shares of common stock and represented the total par value thereof to be $420,000; that in each of said certificates the defendant company, without authority from the Executive Council, placed a par value of $100 per share on said common stock, which in fact was of no par value; that in each certificate, the said company failed to state what property was received in payment for the said shares of capital stock; that in each certificate of issuance for capital stock filed from May 29, 1923 to August 5, 1929, in which stock was issued for property, the defendant company wholly failed to set out or to describe the property which was received in payment for said stock, and by reason of such failure and omission the stock so issued was wholly void; the defendant has continued to issue capital stock for property without authority from the Executive Council, and without making reports to the officers of the State of Iowa, as required by law; that since August 15, 1929, the said company has issued 12,550 shares of preferred stock, part of which—the exact amount of which plaintiff cannot state—was issued without receiving full par value therefor; that the purchasers of said stock, issued for less than par value, confederated and conspired with the officers of the defendant company, to wit, George M. Bechtel and Harold R. Bechtel, to sell said stock to the prospective purchasers at less than par value and to have said stock issued, and to falsify the books of said corporation so that they would show the full par value had been paid therefor; that the plaintiff cannot state the exact

amount of which the said corporation was defrauded thereby, but is informed and believes, and therefore charges the truth and fact to be, that it was approximately the sum of $600,000; that the plaintiff is also informed, and believes, and therefore charges the truth and fact to be, that the officers of said company have issued other shares of its capital stock, the exact amounts of which are unknown to plaintiff, but are well known to said defendant, and readily ascertainable from its books and records, without receiving the full par value therefor; that no report was made to the Secretary of State of the issuance of said 12,550 shares of stock; that, in violation of law, the said company stated in the certificates of preferred stock issued that the full par value thereof had been paid, and such certificates were made a part of said unlawful conspiracy between the officers and the purchasers, who did not pay full par value; that about January 12, 1927, the said corporation filed an amendment to its corporate Articles authorizing it to issue 100,000 shares of common stock without par value, which amendment provided that the holders of the outstanding 10,000 shares of common stock should surrender them for cancellation and receive instead certificates for shares of the no-par common stock at the rate of ten shares of the latter for one share of the old common stock; that said amendment provided that the stock exchange should be made without any transfer of surplus and/or undivided earnings and/or profits to capital account to represent the same; that the defendant corporation failed to make application to the Executive Council to issue the new stock or to make the exchange, and issued the stock without having received anything of value therefor, and made no report to the Secretary of State of the issuance of said stock; that the holders of said common stock paid nothing for the 100,000 shares of common stock so issued, and that all of the common stock of said corporation is void under the laws of Iowa; that in all financial statements to its stockholders, the said corporation falsely represented that the said 100,000 shares of common stock had a par value of $1,000,000; that on August 1, 1938, the defendant corporation held a stockholders' meeting at Davenport, Iowa, to consider the proposed plan of recapitalization, under

which it was proposed that all outstanding common and preferred stock be cancelled and there be issued therefor common stock on the following basis: The holder of each share of 7-per cent preferred stock should receive a dividend certificate for $32.08 and 4.2 shares of the new common stock for each share of the old stock; the holder of 6½-per cent preferred stock to receive a dividend certificate for $29.79 and 4.9 shares of new common stock for each share held; the holder of 6-per cent preferred stock to receive a dividend arrears certificate of $27.50 and 3.6 shares of the new common stock for each share of the old stock held; and each holder of the common stock to receive 39,458/100,000 share of new common stock for each share of old common stock held; that the laws of Delaware require that a majority of each class of stock outstanding must be voted in favor of any amendment involving a plan of recapitalization; that plaintiff is informed and believes, and therefore charges the truth and fact to be, that a majority of each of the different classes of preferred stock did not vote in favor of said plan of recapitalization; that the officers and directors of said defendant, in addition to the other acts of said meeting, recognized and allowed to vote at said meeting all of the void stock hereinbefore referred to, and plaintiff is informed and believes, and therefore charges the truth and fact to be, that, if said void stock had not been recognized and allowed to vote at said meeting, there would not have been a majority of each class of stock voting in favor of said plan of recapitalization, and that for all of said reasons, the actions of said meeting were of no force and effect; that the said defendant will continue to issue said no-par common stock and will require the surrender of outstanding preferred stock and will continue to issue and recognize deferred dividend certificates; that the exchange of stock as planned was all on an arbitrary basis fixed by a committee composed, in part, of directors of said corporation, and of others, without reference to the legal rights of any of the stockholders, and with knowledge on the part of said defendant's officers and directors that a large part of the preferred stock had been issued without payment of par value therefor, and with knowledge that the 100,000 shares were worthless, had

been issued without the corporation receiving value therefor, and without receiving authority for its issuance from the Executive Council; that the officers of said defendant are still issuing stock in violation of the laws of Iowa and without the authority of the Executive Council; that the defendant corporation is issuing dividend arrears certificates in accordance with said meeting of August 1, 1938, and by reason of the unlawful acts alleged said defendant has placed its affairs in such condition that it is impossible to determine, without a complete audit of its books and records, and without a judgment of this court, as to what stock had been unlawfully issued prior to said August 1938, meeting; that said defendant has paid out approximately $266,000 of its funds to the holders of said deferred dividend certificates; that said defendant contemplates continuing the issuance of said new common stock and dividend certificates in said stock exchange, and to make further payments on said dividend certificates; that said payments are being made both within and without the State of Iowa, making the recovery of the Company's funds so paid out impossible without a multiplicity of suits, and a great expense to the corporation; that many of said deferred dividend certificates were issued to holders of preferred stock which was void; that large blocks of the defendant company's stock were issued for property without authority of the Executive Council, and without its appraisal or valuation, and in violation of chapter 387, and are therefore void; that the deferred dividend certificates are being generally sold within and without the State of Iowa, and their transfers are being recognized by the officers of said defendant and recorded on its books; that the parties who are the holders of the new common stock authorized by the pretended stockholders' meeting of August 1, 1938, have conspired and confederated with the officers of said corporation, named as defendants herein for the purpose of avoiding and defeating the provisions of said chapter 387, and said new common stock is void because thereof; that the said officers and said corporation are maintaining a corps of canvassers at the expense of the corporation for the purpose of having the preferred stock exchanged for the new common stock, and the funds of the corporation are being thereby wasted.

The plaintiff prayed: (1) The court to determine what stock was validly issued by the defendant corporation, and what outstanding stock was entitled to voting rights; (2) the court to decree that all of the stock issued in connection with the note of $586,761.77 dated May 31, 1933, due December 31, 1941, bearing no interest, given in connection with the issuance of part or all of the 12,550 shares of preferred stock has no right to participate in any stockholders' meeting of said defendant, and to decree that neither it nor anyone representing it shall recognize any voting rights of said stock, and that a restraining order issue to that effect; (3) that a like order issue as to the 100,000 shares of common stock described in the petition; (4) the court decree that the holders of all preferred stock for which full par value was not paid in cash, had no voting rights as of August 1, 1938, or any date after its issue; (5) the court to decree that all of the stock alleged to have been issued in violation of chapter 387, had no voting rights in the meeting of August 1, 1938, and that all common no-par stock issued under the amendment to the corporate Articles pretended to be adopted at said meeting was void and without voting rights, and that said defendant, and its officers, agents and employees be restrained from according to said common stock any rights in connection with the management of said defendant, and from permitting the holders of said stock to exercise powers as shareholders, or participating in any benefits as stockholders; (6) the said defendant, or those representing it, in any capacity, be restrained from issuing any stock or certificates, under said amendment, or paying out any funds on said certificates, until final hearing, when said injunction be made permanent; (7) the court to appoint a temporary receiver for said corporation, with authority to take immediate possession of all its records, funds, bank accounts, moneys due it, and its management and business, until further hearing, when the receivership be confirmed and continued until the termination of this suit; (7-a) that all stock issued, as alleged, in violation of the laws of Iowa be decreed void and ordered cancelled by the officers of said corporation; (8) the court decree all dividend arrears certificates issued to be void, and all payments made

thereon to have been wrongfully made, and that no further payments be made; (9) that the court order all property of said defendant within the State of Iowa be sold and the proceeds thereof distributed to those who shall be found to be the valid owners of the stock, and to dissolve the corporation and wind up its affairs and cancel its permit to operate in Iowa; (10) that all stock issued and held in violation of the provisions of chapter 387 of the Iowa Code be decreed void, and that in determining the validity of any stock issued by said corporation the court require to be brought in any additional necessary parties as defendants; (11) that a resident of Iowa be appointed as permanent receiver of the defendant Utilities Company in accordance with the provisions of chapter 387 of the Iowa Code; and (12) that the court grant such other and further relief as may seem equitable in the premises, and for the costs of this action.

The interveners, Thatcher and Rosseau, answer alleging their ownership of stock, and admitting many allegations of the petition, either on information and belief or otherwise, and pray that their stock be decreed valid, and that all stock illegally issued be decreed void and without voting rights, and that the voting rights of the defendants be determined, that the officers and directors be enjoined from paying out funds upon the dividend arrears certificates as alleged in the petition, and that a receiver be appointed as prayed, and for general equitable relief.

I. The question involved in this case is simply this: Has the plaintiff in its petition alleged facts sufficient to enable it to procure from its courts the relief demanded, or any part of that relief? Stated otherwise, among the various causes of action, or grounds of relief, alleged, is any one of them good? In a similar case and under like procedural circumstances, the court of appeals of New York, speaking through Cardozo, J., said: "The question before us at this time is not whether the plaintiff is entitled to all the relief demanded. The question is whether he is entitled to any relief." Travis v. Knox Terpezone Co., 215 N. Y. 259, 262, 109 N. E. 250, L. R. A. 1916A, 542, Ann. Cas. 1917A, 387; Lydia E. Pinkham

Med. Co. v. Gove, 298 Mass. 53, 9 N. E. 2d 573. The same principle was announced by this court in Peters v. Phillips, 63 Iowa 550, 553, 19 N. W. 662, 664, as follows:

"The question to be determined is, not whether the plaintiff is entitled to all of the relief he asks for in the prayer of the petition, but is he entitled to any relief in equity, conceding the facts set forth in the petition to be true?"

Every ground of a motion in equity to dismiss, or of a demurrer, should be, in itself, sufficient to sustain a favorable ruling for the moving party. If it lacks this sufficiency, it has no proper place in the pleading. The appellee therefore urges the often-heard proposition that if one ground of the motion or equitable demurrer is good, the motion is good. But as noted above, this is true only if it is good as against every cause of action or ground of relief alleged.

As heretofore stated, the learned trial court sustained the motion generally, so that counsel and this court are not favored with even an intimation of the particular basis of its ruling—whether it considered one, or more, or all, of the grounds good, or that the petition did not state facts sufficient as against the moving defendant, or whether the court had no jurisdiction of the action. In this situation the appellant has been compelled to challenge every pleaded reason. The appellee, of necessity, as broadly opposes the challenge. Answering these numerous contentions has greatly extended this opinion. We will take up the grounds of the motion in the order in which the appellee, Iowa Southern Utilities Company, has presented them. Neither the interveners nor any other appellee has submitted any brief or argument.

II. Grounds 3, 4, 5, and 6 of the motion are as follows:

"3. The petition fails to show that this defendant corporation is of the character contemplated by Chapter 387, Code of Iowa, 1935, to be subjected to the regulations imposed upon Iowa Corporations with respect to the issuance of capital stock.

"4. The facts stated in the petition fail to show that this defendant corporation has violated any of the provisions of Chapter 387, * * *, pursuant to the purported authority of which

said Chapter this action is sought to be maintained and upon the alleged violation of which plaintiff seeks the relief demanded.

"5. The petition fails to show that any of the capital stock of this defendant corporation is owned or controlled in violation of the provisions of Chapter 387, * * *.

"6. The petition fails to show that any of the capital stock of this defendant corporation is owned or controlled by any corporation in violation of the provisions of Chapter 387, * * *."

The authorities cited by appellee, in this division, give little aid. This is necessarily so, since chapter 387 has had little, if any, construction by this court, and the answers must be found in the sections of the chapter itself, in the purposes sought by the legislation, and in similar legislation respecting domestic corporations. The appellee has presented to us, in support of these four grounds, a long, involved, and, we think, specious argument. Time and space do not permit us to analyze it in detail. The conclusion which appellee offers to us is that the chapter affects, and was intended by the Legislature to affect, only foreign "holding" corporations, which own or control the capital stock of foreign utility corporations operating in Iowa. Still further narrowing the application, appellee insists that the legislation was meant to reach only such foreign "holding" corporations, as should be without a permit to transact business in Iowa. Chapter 387 was enacted by the 35th General Assembly and appeared in chapter 136 of its Acts. The title to the Act is as follows:

"AN ACT to require foreign corporations owning, controlling, operating or concerned in the operation of any public gas works, electric light plant, electric power plant, heating plant, water works, inter-urban or street railway located within the state of Iowa, or the business of such works, plants or railways, or owning or controlling stock in any corporation owning, operating or concerned in the operation of any public gas works, [etc., as set forth above] * * * to comply with the laws * * * of domestic corporations and the making of reports by domestic

corporations and *to require said foreign corporations to obtain a permit to transact business within the state of Iowa,* and conferring upon courts of equity jurisdiction to dissolve and terminate corporations, works, plants or businesses violating this act and providing penalties for violations of this act." (The italics are the appellee's.)

After setting out this title and placing the italics therein, the appellee states:

"*From this title it will be noted that one of the avowed purposes of the act was to require foreign corporations defined therein to obtain a permit to transact business within the state of Iowa.* Of course, foreign public utility operating companies were already required by law to obtain a permit to transact business here, *and the inclusion of this provision in the statute must have been directed at foreign public utility holding companies* which controlled public utility operating companies through the *ownership* and *control* of their stock, but which, since they did no other business in the state, were not qualified or licensed to operate here." (The italics are the appellee's.)

The appellee thus selects as an "avowed" purpose of the Act one which, were it not for chapter 387, might have been considered included in chapter 386, requiring foreign corporations generally to obtain permits to do business in the state. Sections "8420 to 8428, inclusive," of chapter 386, were made applicable by section 8433 of chapter 387 to foreign public utility corporations, both operating or "holding," but it was not the sole purpose of enacting chapter 387. Sections 8430 to 8432, inclusive, of chapter 386, were also made applicable to foreign utility corporations by section 8437 of chapter 387. Chapter 387 made the said sections of chapter 386 applicable to foreign utility corporations, both operating or "holding," but it did not make the sections apply to them in any different manner than they applied to foreign corporations in general.

In addition to making said sections of chapter 386, relating to permits to do business, applicable to foreign public utility corporations, section 8433 also makes sections 8412 to 8416, inclusive, of chapter 385, likewise applicable. We have set

them out herein. They require domestic corporations to issue no shares of capital stock to anyone until the corporation has received par value therefor. Under chapter 387 this same prohibition is made applicable to foreign public utility corporations, both operating and "holding." Such legislation is intended to prevent the "watering" of capital stock. It requires the corporation to receive money or money's worth for its stock. It is salutary and most reasonable legislation. A violation thereof by any of the corporations referred to in section 8433 is therein declared to be unlawful.

Section 8433 clearly makes chapter 387 applicable to and effective against any foreign corporation which directly or indirectly owns, uses, operates, controls, or is concerned in the operation of any public utility located within the state, or in carrying on the business of such a utility. Under the pleaded facts, the appellee is such a foreign corporation. While this section also specifically includes "holding companies," or foreign corporations owning or controlling any of the capital stock of any operating foreign public utility located within this state, section 8434 also expressly makes the chapter apply to such "holding companies."

Section 8435 provides for annual reports and payment of fees. Section 8436 specifies what sales of stock and corporate obligations come within the provisions of the chapter.

The teeth of the statute are placed in sections 8437 and 8438. The first of these sections plainly states that shares of stock "owned or controlled in violation of the provisions of this chapter shall be void and the holder thereof shall not be entitled to exercise the powers of a shareholder of said corporation or permitted to participate in or be entitled to any of the benefits accruing to shareholders of said corporation, * * *." What does the phrase "stock owned or controlled in violation of the provisions of this chapter," mean? It means simply and plainly "stock unlawfully issued," or "stock owned and controlled because it was unlawfully issued," or "stock owned and controlled by reason of the violation of sections 8412 to 8416, inclusive." The phrase "in violation of the provisions of this chapter" is limited to but two statutory breaches, one is a violation of

sections 8412 to 8416, inclusive, forbidding the unlawful issuance or sale of stock below par, the other is a violation of sections 8420 to 8428, inclusive, requiring foreign corporations wishing to transact business in the state to procure a permit. The penalties for the violation of these last-mentioned sections in chapter 386 are found in sections 8427, 8429, 8430 and 8431 of the chapter. None of these penalties, and no section in chapter 386, nor any violation thereof, has anything to do with the issuance, sale, owning or controlling of shares of capital stock. The phrase, ''stock owned or controlled in violation of the provisions'' of chapter 387, therefore, can mean only stock unlawfully issued, and in violation of sections 8412 to 8416, inclusive. Section 8437 clearly and definitely means that all shares of capital stock of every foreign public utility corporation whether an operating or a ''holding company or corporation,'' within the purview of chapter 387, and issued or disposed of in violation of its provisions, and whether owned or controlled by an individual, corporation, ''holding company,'' or other legal entity, is absolutely void. The appellee contends that: ''All indications are therefore that Section 8437 applies to stock owned and controlled by foreign public utility holding companies, without obtaining a permit to do business within the state of Iowa. No other stock is made void or voidable by the chapter.'' It also asks us: ''Is it not clear that this is the ownership or control which is forbidden by the chapter, namely, *ownership or control of operating companies in the state by foreign public utility holding companies which have not secured a permit to do business in Iowa?*'' (Italics are the appellee's.) Our answer must be in the negative. Such a construction of section 8437 and of the other provisions of the chapter is wholly unwarranted and would defeat the plain purpose of the statute. The incongruity of such an interpretation is made evident in various ways. The object of chapter 387 was to prevent foreign public utility corporations from issuing ''watered'' stock to those on the ''inside,'' or on the ''ground floor,'' to the financial loss of the honest shareholder who paid full value for his stock. But if we accept the conclusion of appellee as correct, the only penalty in chapter 387 is against the holding company who does business in Iowa without ob-

taining a permit. Its stock alone is void, "or voidable," as appellee puts it. All other foreign public utility corporations, such as the appellee, owning, operating, and controlling their plants in Iowa, and selling stock to its citizens at par value, could issue other stock, as alleged in the petition, at much less than par value, with complete exemption from punishment. True, section 8433 declares it to be unlawful, but the construction of appellee would so completely draw the teeth of the legislation, that the law-breaking operating utility would go scot-free.

What happens to a domestic corporation when it violates the provisions of sections 8412 to 8416? The answer is found in sections 8417, 8418 and 8419, which in substance provide that the stock so issued shall be void, and cancelled on suit by the attorney general, and the purchase price returned to the buyer, the corporation dissolved, its affairs wound up and its assets distributed among the stockholders *"other than those who have received the stock so unlawfully issued,"* (italics ours) and the guilty officers heavily fined and imprisoned. The italicized words confirm the meaning which we have already given herein to the phrase "owned or controlled in violation of the provisions of [Chapter 387]." We think it is hardly possible that the Legislature intended to visit such drastic punishment on corporations organized under the laws of Iowa for the violation of statutes, which, according to the appellee, foreign public utility corporations, operating their plants and with all their assets in Iowa, may breach with impunity. It is clear to us that the Legislature intended to impose upon such offending foreign corporations the full force of sections 8437 and 8438. These sections are broader and more drastic in the penalties provided than are sections 8417 and 8418. They were perhaps made so by the Legislature with deliberation and intention. The legislation in chapter 387 became effective by publication on April 8, 1913. On October 22, 1912, shortly before the 35th General Assembly convened, this court, in construing the statutes now embodied in chapter 385, in First Nat. Bk. v. Fulton, 156 Iowa 734, 137 N. W. 1019, held that the word "void" meant "voidable" when used with respect to a note

given by a solvent maker for capital stock thereafter issued. It may have been because it disagreed with this judicial interpretation that the Legislature inserted in the closing lines of section 8437 these significant words: "* * * *and courts and juries shall construe this chapter so as to prevent evasion and to accomplish the intents and purposes thereof.'' (Italics ours.)

It is our judgment that grounds 3, 4, 5, and 6 of the motion to dismiss are without merit.

III. Grounds 7, 8, 10, and 18 of the motion are as follows:

"7. The provisions of Chapter 387, * * *, are void and unenforcible as against this defendant corporation, for the reason that the application of said statutes, or the attempted enforcement thereof, constitutes an unlawful attempt by the State of Iowa to exercise visitorial powers over foreign corporations.

"8. The provisions of Chapter 387, * * *, contravene Section 1 of Article 4 of the Constitution of the United States, Section 1 of the 14th Amendment to said Constitution, and Section 9 of Article 1 of the Constitution of the State of Iowa.

"10. It affirmatively appears on the face of the petition that the defendant corporation was created and is now existing under authority of the laws of the State of Delaware, and the State of Iowa, or the courts thereof, are without power to exercise, or attempt to exercise, visitorial powers over such a foreign corporation; and the relief prayed by plaintiff would require this court unlawfully to exercise control over and interfere with the internal affairs of this defendant corporation, and to exercise visitorial powers over such corporation.

"18. The penalties attempted to be authorized in event of violation of the provisions of Chapter 387, * * *, cannot lawfully be applied or enforced against a foreign corporation doing business in the State of Iowa.''

In passing upon these propositions, it must be kept in mind that while the appellee is a corporation organized under the laws of Delaware, it is what the authorities or decisions speak

of as a "tramp" or "migratory" corporation. 20 C. J. S. 15, section 1793; 23 Am. Jur. 126, section 123; McCutcheon v. Merz Capsule Co., 6 Cir., Mich., 71 F. 787, 31 L. R. A. 415; State v. Georgia Co., 112 N. C. 34, 17 S. E. 10, 19 L. R. A. 485.

"While this practice of taking out a charter in one state to do business solely in another is probably too general and too long recognized to be questioned, the courts of a state in which such business is to be done are ordinarily reluctant to adopt a construction of the local laws which would enable corporators, by resorting to such practice, to receive, by reason of foreign incorporation, more favorable treatment than similar domestic corporations." 23 Am. Jur. 127, section 123.

Its promoters went from Iowa to Maine and first organized under the laws of the latter state. Later they reorganized under the laws of Delaware. They had no apparent intention of operating their utility plant, or of doing any other business in Maine or Delaware. Its offices, its plant and operating property, its assets, except a bank account or two, its business, almost all of its officers, its books and records, in fact, all of its physical manifestations, have always been, and are now in Iowa, within the jurisdiction of the courts of Iowa. The corporation and its officers have appeared in this suit. The record discloses that at least one meeting was held in Iowa, and it is a reasonable inference under the pleadings that other corporate actions complained of took place in Iowa. Its creation in Delaware was purely one of convenience, or other hoped for advantage. It was not for the purpose of becoming an actual, as well as a legal, resident of Delaware. While it was, and is, in law a legal resident of Delaware, and has its technical domicile there, its "commercial" or "economic" domicile is in Iowa. It was conceived in Iowa, born in Delaware, and has lived its entire life in Iowa. The foreignness of such a corporation has been spoken of as but a "metaphysical concept." Its existence in Delaware is an illusory mirage, more atmospheric than real. Under the circumstances it is, in actuality, more domestic than foreign. The courts of this state have full jurisdiction of the parties

and the subject matter with authority to grant all of the relief prayed for, and the power at hand to fully enforce such decree.

Being a foreign corporation, and not being engaged in interstate commerce, or in any work or service of the Federal Government, it had no right to transact any business in Iowa except by complying with the statutory requirements enacted by the Legislature, and receiving a permit. Its right to do business in Iowa has not been because of any of the rules of comity, which may exist between Iowa and Delaware, but solely because it has accepted the conditions of entrance and has impliedly and expressly agreed to abide by and subject itself to the laws of Iowa. Even though it were transacting business in this state by virtue of the doctrine of comity, the principles thereof would forbid the exercise of any corporate powers contrary to the laws of this state or repugnant to its public policy as evidenced by its laws or judicial decisions, or prejudicial to the interests of its citizens. Sparks v. Accident Assn., 100 Iowa 458, 465, 69 N. W. 678; 20 C. J. S. 13, section 1790. Speaking generally, a state may exclude a foreign corporation from transacting business within its borders, or condition its admittance, as it sees fit, providing it does not thereby violate its own Constitution or the Constitution of the United States. We have mentioned two exceptions to this rule of law. Some other exceptions are referred to in Hanover Fire Ins. Co. v. Harding (Carr), 272 U. S. 494, 47 S. Ct. 179, 71 L. Ed. 372, 49 A. L. R. 713, but the appellee comes within no exception. Many authorities could be mentioned. We cite but a few. Bank of Augusta v. Earle, 38 U. S. (13 Pet.) 519, 10 L. Ed. 274; Paul v. Virginia, 75 U. S. (8 Wall.) 168, 181, 19 L. Ed. 357, 360; Horn Silver Mining Co. v. New York, 143 U. S. 305, 12 S. Ct. 403, 36 L. Ed. 164; Atlantic Refining Co. v. Virginia, 302 U. S. 22, 33, 58 S. Ct. 75, 82 L. Ed. 24; Hooper v. California, 155 U. S. 648, 15 S. Ct. 207, 39 L. Ed. 297; Nelson v. Sears Roebuck Co., 312 U. S. 359, 61 S. Ct. 586, 85 L. Ed. 888, 132 A. L. R. 475; First Bank Stock Corp. v. Minnesota, 301 U. S. 234, 57 S. Ct. 677, 81 L. Ed. 1061, 113 A. L. R. 228; Pullman Co. v. Kansas, 216 U. S. 56, 65, 30 S. Ct. 232, 54 L. Ed. 378, 385; Noble v. Mitchell, 164 U. S. 367, 17 S.

Ct. 110, 41 L. Ed. 472; American Fidelity Co. v. Bleakley, 157 Iowa 442, 138 N. W. 508; Schmid v. Automobile Underwriters, 215 Iowa 170, 175, 244 N. W. 729, 85 A. L. R. 4; Weiditschka v. Supreme Tent K. M. W., 188 Iowa 183, 170 N. W. 300, 175 N. W. 835; Peacock Coal Co. v. Gaines Coal Co., 206 Iowa 1228, 219 N. W. 24; Manchester Fire Ins. Co. v. Herriott, 91 F. 711; Sparks v. National Acc. Assn., 100 Iowa 458, 465, 69 N. W. 678; Dixon v. Northwestern Ins. Co., 189 Iowa 1268, 179 N. W. 885; Nelson v. Nederland Life Ins. Co., 110 Iowa 600, 604, 81 N. W. 807; McGuire v. Railway, 131 Iowa 340, 369, 108 N. W. 902, 33 L. R. A., N. S., 706; Scottish Union & N. Ins. Co. v. Herriott, 109 Iowa 606, 613, 615, 616, 80 N. W. 665, 77 Am. St. Rep. 548; Miller Brewing Co. v. Council Bluffs Ins. Co., 95 Iowa 31, 35, 63 N. W. 565; Noble v. English, 183 Iowa 893, 897–899, 167 N. W. 629; 23 Am. Jur. 203, 211, sections 234 et seq., 243 et seq.; 17 Fletcher Cyc. Corp., Perm. Ed., sections 8386–8389 et seq., 8446 et seq.; 20 C. J. S. 30, 42, sections 1810, 1822; 23 Am. Jur. 209, section 240 et seq.

The legislation, now found in chapter 387, was in effect when the appellee received its permit to transact business in Iowa. It was required to obey its provisions, and to dispose of none of its shares of capital stock contrary thereto, regardless of the provisions of its charter, or articles of incorporation, or the laws of its domicile. Many authorities and decisions recognize this. It is thus stated in 23 Am. Jur. 95, 96, section 91:

"Although the organic power of a foreign corporation depends upon the law of the state from which its existence is derived, in the exercise of such power in another jurisdiction the corporation must conform to the local laws and public policy. The validity and effect of its acts in states other than the state of incorporation, even though such acts are within its charter, must depend upon the law of the jurisdiction in which such exercise takes place and in which such acts are done. Its submission to do business within the state is not by right, but by comity only, and it is, in respect of business done within the state, generally subject to, and bound by, the local laws and unable to exercise powers or perform acts, whether author-

ized by its charter or not, which are contrary thereto. The general rule is that it tacitly submits itself, when it voluntarily enters the state and engages in business there, to the valid laws of such state and to the jurisdiction and process of its courts to the extent required by such laws.''

A great many cases from the courts of the United States and two thirds of the states are cited in support of the text.

Speaking for the New York court, in German-American Coffee Co. v. Diehl, 216 N. Y. 57, 63, 109 N. E. 875, 876, Cardozo, J., said:

''As long as a foreign corporation keeps away from this state it is not for us to say what it may do or not do. But when it comes into this state and transacts its business here, it must yield obedience to our laws. (Sinnott v. Hanan, 214 N. Y. 454, 458) [108 N. E. 858.] For many purposes the fiction of its residence in the state of its origin must then be disregarded. [Citing cases.] This statute makes no attempt to regulate foreign corporations while they keep within their domicile. It is aimed against them only while they elect to live within our borders. The duty which it imposes arises only when they come to us, and ends the moment that they leave us. Such a statute, however phrased, is in effect a condition on which the right to do business within the state depends. [Citing cases.] * * * If they take the corporation out of the state, they may declare dividends as they please. If they elect to keep it with us, they must not lead it into paths of ruin. In these days, when countless corporations, organized on paper in neighboring states, live and move and have their being in New York, a sound public policy demands that our Legislature be invested with this measure of control. If the control is irksome, it may be avoided by leaving us.''

The language might well be applied to the appellee, under the allegations of the petition.

This court has expressed the same thought at different times. '' 'Foreign insurance companies are not compelled to do business in this state. If they voluntarily choose to do so, however, they must submit to such conditions and restrictions

as the legislature may see fit to impose.' " Nelson v. Nederland L. Ins. Co., 110 Iowa 600, 604, 81 N. W. 807, 808; Baldwin v. Supreme Tribe of Ben Hur, 203 Iowa 198, 201, 212 N. W. 562, 563.

In Weiditschka v. Supreme Tent K. M. W., 188 Iowa 183, 186, 187, 170 N. W. 300, 301, 175 N. W. 835, we said:

"The defendant association had no right to transact business in this state without permission, *and even then was bound to proceed in accordance with its laws*. [Italics ours. Citing Iowa cases, and New York L. Ins. Co. v. Cravens, 178 U. S. 389, 20 S. Ct. 962, 44 L. Ed. 1116.] In the last named case, the court said: 'The power of the state over foreign corporations is not less than the power of a state over domestic corporations. No case declares otherwise. We said in Orient Ins. Co. v. Daggs, supra [172 U. S. 557, 566, 19 S. Ct. 281, 284, 43 L. Ed. 552]: "That which a state may do with corporations of its own creation, it may do with foreign corporations admitted into the state. This seems to be denied; if not generally, at least as to plaintiff in error. The denial is extreme, and cannot be maintained. The power of a state to impose conditions upon foreign corporations is certainly as extensive as the power over domestic corporations, and is fully explained in Hooper v. California, 155 U. S. 648 [15 S. Ct. 207, 39 L. Ed. 297]." ' "

In American Fid. Co. v. Bleakley, 157 Iowa 442, 446, 138 N. W. 508, 509, this court said:

"The state has the undoubted right to say whether foreign corporations shall be permitted to do business here at all, and, if such permission is granted, it may be upon such terms and conditions as the state shall prescribe. And, where it is the manifest intention to limit or restrict the powers given to such corporation by its charter, courts have no authority to override such legislation on the ground of comity between the states. Within its power, the state, through its Legislature, is supreme, and the court's duty is ended when it determines what the statutory law is."

In the late case of Independent Order of Foresters v. Scott,

223 Iowa 105, 115, 272 N. W. 68, 74, speaking through Justice Stiger, we said:

"The power of the State over foreign corporations transacting business within the State is as extensive as its power over domestic corporations. The petitioner, a foreign corporation, is transacting business in the state of Iowa and is subject to all the remedies available against domestic corporations."

In Miller Brewing Co. v. Council Bluffs Ins. Co., 95 Iowa 31, 35, 63 N. W. 565, 566, the court said:

"Where a state prescribes conditions upon which a foreign corporation may do business within it, such corporation thereafter doing business in the state will be presumed to have assented to the conditions prescribed, and will be bound accordingly."

See also, to the same effect, Noble v. English, supra, 183 Iowa 893, 897, 167 N. W. 629; McGuire v. Ry., supra, 131 Iowa 340, 369, 108 N. W. 902, 33 L. R. A., N. S., 706; Dixon v. Northwestern Life Ins. Co., supra, 189 Iowa 1268, 1273, 179 N. W. 885; 23 Am. Jur. 106, section 99, page 207, section 238, page 209, section 240; 20 C. J. S. 35, section 1813. In 17 Fletcher Cyc. Corp. 679, 680, section 8541, the author, speaking of a licensed foreign corporation, states:

"Compliance with statutory prerequisites has the effect, generally speaking, of bringing the compliant foreign corporation into the state on substantially the same footing as domestic corporations, except as otherwise specified by the statutes. * * * It subjects itself to all valid provisions of the laws of the state affecting it, and becomes constructively present in the state for jurisdictional and suit purposes and is deemed to have assented to all statutory conditions relating to it in those respects; it is even regarded as a resident of, or no longer 'out of the' state, for some purposes, * * *."

See also 20 C. J. S. 23, 24, section 1803. Speaking directly to the situation in the case before us, the author in section 240, page 210 of 23 Am. Jur., says:

"In the case of corporations the foreign character of which is nominal merely, and which have established their business or commercial domicils in the state, the jurisdictional authority of the state over them is ordinarily enhanced to a point which more nearly approximates that which it has over domestic corporations, although in some respects it remains limited by the fact of foreign origin."

The appellee seeks to avoid the force and effect of the principles and decisions above noted by insisting that if they are to be given any consideration at all, they do not permit the exercise of visitorial powers upon a foreign corporation doing business in a state other than that of its creation, or permit such state or its courts to interfere with its so-called internal affairs.

The courts and other authorities have had much difficulty, in these later years, because of the enormous expansion of, and changes in, corporate business, to either define or delimit the two expressions. The terms have come to mean, and to be used to express, about the same thought. While the term "visitorial," which is sometimes given the more awesome appearance of "visitatorial," was originally used almost entirely with respect to domestic corporations, it is now usually applied to foreign corporations doing business out of their domiciliary State. The author in 13 Am. Jur. 1066, section 1146, thus speaks of "visitation":

· "Visitation is defined as the act of examining into the affairs of a corporation. Except in the case of a few institutions which have private visitors, the right of visitation is a public right exercised by the sovereignty. (Footnote: The power of visitation through private visitors is at common law applied only to ecclesiastical and eleemosynary corporations * * *. The right is an hereditament founded in property and valuable in intendment of law and stands upon the maxim that he who gives his property has a right to regulate it in the future.) The purpose of visitation is to supervise and control the management of the corporation, and visitors of corporations have power to keep them within the legitimate sphere of their

operations and to correct all abuses of authority and to nullify all irregular proceedings. In England the King, being the sole founder of all civil corporations, was constituted the visitor of all such corporations; in this country the visitorial power over corporations existing under and by virtue of the laws of a state vests in the state, * * * and is exercised through the medium of the courts or by visitors appointed for that purpose by or in pursuance of statutes. * * * Courts of equity, as will be seen later, at the present time often assume juridiction to control or restrain the wrongful action of corporations on general principles of equity independent of any question of visitorial power. *The state by its authorized officers has the undoubted right to require full information as to all of the business of a private corporation created by it or which it has permitted to come into the state, for the state has the right to know what its creature or one of another sovereignty which it permits to come into the state is doing.''* (Italics ours.)

The last thought is also expressed by Fletcher in 17 Cyc. Corp. 381, section 8427, thus:

''While a foreign corporation is not subject to the general visitorial powers which a state possesses over domestic corporations, the franchises of a foreign corporation doing business within the state must be exercised in accordance with the laws thereof, and consequently the state has the same visitorial powers over such a corporation, necessary to enable it to ascertain whether its laws have been obeyed, as it has for such purpose over a corporation of its own creation.''

In 23 Am. Jur. 433, section 439, the author states:

''A state has visitorial power over foreign corporations in so far as they are doing business within the state, and in connection with the acts constituting such business; and such regulation by the state is not deemed to interfere with the internal affairs or management of such corporations.'' See, also, Hammond Packing Co. v. Arkansas, 212 U. S. 322, 29 S. Ct. 370, 53 L. Ed. 530, 15 Ann. Cas. 645; Williams v. Gaylord, 186 U. S. 157, 22 S. Ct. 798, 46 L. Ed. 1102; Consolidated Rendering Co. v. Vermont, 207 U. S. 541, 28 S. Ct. 178, 52 L. Ed. 327, 12 Ann. Cas. 658.

Section 8438 of chapter 387 expressly authorizes the Attorney General, or any citizen of the State, in its name, to prosecute such visitorial proceedings as are referred to in the texts. Such a proceeding is neither unlawful visitation nor an improper interference in the internal affairs of the appellee. An instructive discussion of the matter of visitation is found in Mayer v. Oxidation Products Co., 110 N. J. Eq. 141, 142, 143, 159 A. 377, 378, 379. It was a representative suit brought by a stockholder against a Delaware corporation to restrain improper diversion of its property and for an accounting and restitution. Relief was granted. The court stated:

"At the outset, complainant is met with the contention that the litigation is beyond the jurisdiction of this court, because it relates to the internal affairs of foreign corporations and because it calls for an exercise of visitorial powers. Visitorial powers is a term often used with no attempt to define its meaning."

After discussing it at length, the chancellor continues:

"Now I much doubt if any of this doctrine has ever been the law in our country. * * * And in our country it has been laid down that the Legislature is visitor of all corporations. I confess that this has, for me, little meaning; I have found no decision of which I could say that it was a case of the exercise of visitorial power over a civil corporation. Of course, the King's Bench and, in New Jersey, the Supreme Court, by the prerogative writs, compel the performance of corporate duties, * * *. But these writs do not depend on a visitation; they issue pursuant to the court's jurisdiction over franchises, * * *. Stockholders' suits in equity have been so common of late years that the court ordinarily finds no need to state the basis of jurisdiction. But an examination of the cases, especially the earlier ones, discloses that the jurisdiction of the Court of Chancery in the usual suit between a stockholder and his corporation is not dependent upon any visitorial power, but is a part of the general equity jurisdiction of the court. * * * Viewed from this angle, the power of chancery to entertain a stockholder's bill is not determined by the character of the cor-

poration, domestic or foreign. * * * A court of equity proceeds in personam against wrongdoers found within its jurisdiction. * * * The corporation's cause of action asserted by the stockholder must be founded on the notion that the diversion of the corporate assets from the purposes for which the corporation was formed is inimical to the corporation. *It is a mistake to regard such suits as an interference with the internal affairs of the corporation.* [Italics ours.] True, the court must ordinarily look into the proceedings of the directors and stockholders, and frequently enjoins action under color of authority of corporate resolutions. But the fundamental inquiry is whether the acts, committed or threatened, are indeed the acts of the corporation, or are they acts of individuals who happen to have control of the corporate affairs." See also Kawfield Oil Co. v. Illinois Refining Co., 169 Okla. 75, 35 P. 2d 961.

Courts have spoken of the difficulty of drawing any definite border line between what has been called the internal affairs of a corporation, whether foreign or domestic, and its external affairs. This fact has been noted in 23 Am. Jur. 426, section 427, as follows:

"It has been judicially observed that there is no sharp line of demarcation between those matters which do and those which do not pertain to the internal affairs of a foreign corporation; and it has also been observed that the term 'internal affairs,' as used in such connection, has no very definite or fixed meaning."

There are, of course, internal affairs of any group relationship, whether it be corporate, or noncorporate, of which the courts will take no cognizance. If any such group selects Tuesday or Friday night, upon a vote, for the time of their weekly meeting, no court would ordinarily review the matter. Likewise, the action at a corporate meeting of directors or stockholders in determining what offices there shall be, or who shall fill them, or their respective powers, or what property their funds shall be invested in, or whether a dividend shall be declared from their surplus, or the rate of dividend, or the expiration of its charter, or the determination of a hundred other like matters,

are of no concern to anyone but the members of the body, and ordinarily a court will not review or interfere in the matter. These are real internal matters or affairs of a corporation, with which neither a domiciliary court nor the court of another state would take cognizance. Not because the courts have no jurisdiction, but because such matters are ordinarily not justiciable. If these matters are fairly determined, any relief or review must be within the corporate body. The principle has been well expressed by the Court of Appeals of the Eighth Federal Circuit in Republican Mountain Silver Mines v. Brown, 58 F. 644, 647, 24 L. R. A. 776, by Thayer, J., as follows:

"Corporations are in a certain sense legislative bodies. They have a legislative power when the directors or shareholders are duly convened that is fully adequate to settle all questions affecting their business interests or policy, and they should be left to dispose of all questions of that nature without applying to the courts for relief."

The principle is further illustrated by the California court in Wall v. Board of Regents of the University of California, 38 Cal. App. 2d 698, 699, 102 P. 2d 533, 534, in which action a writ of prohibition was sought against the defendant to prevent it from continuing the employment and salary of one of its employees. In denying the petition, the court said:

"The board of regents constitute a corporation and from the petition it would appear that it is a normally functioning body. This being so, this court has no right to interfere with its government. The conclusions reached by the regents are final in the absence of fraud or oppression. 'It is an elementary principle of law that a court has no power or right to intermeddle with the internal affairs of a corporation, in the absence of fraudulent conduct on the part of those who have been lawfully entrusted with the management and conduct of its affairs. * * * Consolidated Cement Corp. v. Pratt, 10 Cir. [Kan.], 47 F. 2d 90 [93]. The authority of the directors in the conduct of the business of a corporation must be regarded as absolute when they act within the law. The court cannot substitute its

judgment for that of the directors.' '' See also Ashman v. Miller, 6 Cir., Mich., 101 F. 2d 85.

In the cited cases, the matters complained of were clearly within the bounds of internal, policy, matters, or affairs of the corporation, and were lawful, but in each case the court stated that if the matters were unlawful, fraudulent, ultra vires, or contrary to the rights of a complaining party, the courts were open to him for relief. There is nothing in the character of such a matter which, in itself, deprives a court of jurisdiction over it.

The appellee contends that the provisions of chapter 387 are void and their attempted enforcement against it are unlawful, and that the courts of this state have no power or jurisdiction to grant any of the relief prayed for because to do so would be the exercise of visitorial power over the appellee, and interference with its internal affairs.

There was a time when courts would have given weight to such a statement, but we may now say it is uniformly conceded that the question is not one of jurisdiction or power in the court of a state which is not the legal domicile of a foreign corporation, but it is a question rather of *discretion* in the court as to whether it will *exercise* jurisdiction. It is a question of the balance of convenience, of whether considerations of public policy, efficiency, expedience and justice to all parties interested demand that jurisdiction be retained in the foreign court, or that it be declined under the rule of forum non conveniens. The rule is thus stated by the Supreme Court of the United States in the majority opinion in Rogers v. Guaranty Tr. Co., 288 U. S. 123, 131, 53 S. Ct. 295, 298, 77 L. Ed. 652, 657, 89 A. L. R. 720:

"Obviously no definite rule of general application can be formulated by which it may be determined under what circumstances a court will assume jurisdiction of stockholders' suits relating to the conduct of internal affairs of foreign corporations. But it safely may be said that jurisdiction will be declined whenever considerations of convenience, efficiency and justice point to the courts of the State of the domicile as

appropriate tribunals for the determination of the particular case.''

There was no division in the court as to the rule, but there was sharp disagreement as to its application under the record. Justice Stone wrote an able dissent, which to the writer appears to be the sounder law and decision, holding that the foreign court should have retained jurisdiction. Justice Brandeis concurred in the dissent. Justice Cardozo wrote a special concurring dissent. Justice Roberts took no part. In that case, under a statute of New Jersey, the directors of the American Tobacco Company formulated a ''plan'' for the distribution of stock among employees, to be selected by the directors. Officers and directors were to be considered employees. The stock had a market value of $112 a share and was to be distributed for $25 a share. The president of the company and certain directors received the larger part of the distribution, besides other unconscionable bonuses and perquisites. The stock was placed in a trustee's possession in New York for distribution. The corporation was a New Jersey one, where its stockholders' meetings were held, and there substantial business was done. It was also done in other states and countries. The principal offices were in New York, its books and records were there, all but one of the individual defendants resided there, its directors met there, and the depositary of the stock in controversy was there. Rogers, a resident stockholder of New York, brought suit against the company and its officers to enjoin the consummation of the plan and to declare the stock void. The suit was removed from the state court to the Federal District Court which held the suit should be prosecuted in New Jersey (60 F. 2d 106). The Second Circuit Court of Appeals affirmed Rogers v. Hill, 60 F. 2d 109, Manton, J., writing the opinion, and Swan, J., dissented, 60 F. 2d 113. The Supreme Court affirmed. The entire record is interesting reading. Justice Stone, in a scathing denunciation of the transaction, contended that either the State Court of New York or the Federal Court could and should have given complete relief, having jurisdiction of the subject matter, the stock itself, and all parties. Justice Cardozo in his dissent (288 U. S. 123, 151, 53 S. Ct. 295, 305) used these significant and trenchant words:

"The doctrine of forum non conveniens is an instrument of justice. Courts must be slow to *apply it at the instance of directors charged as personal wrongdoers,* when justice will be delayed, even though not thwarted altogether, if jurisdiction is refused. At least that must be so when the wrong is clearly proved. *The overmastering necessity of rebuking fraud or breach of trust will outweigh competing policies and shift the balance of convenience. Equity, it is said, will not be over-nice in balancing the efficacy of one remedy against the efficacy of another when action will baffle, and inaction may confirm, the purpose of the wrongdoer."* (The italics are ours.)

It may be conceded that the courts have, perhaps, in a greater number of cases found that the balance of convenience pointed to the courts of the domiciliary state, and this has been spoken of as the general rule. But there is a well defined exception to and limitation on that rule. It is thus stated by the author in 17 Fletcher Cyc. Corp. 378 et seq., section 8427:

"However, the courts generally recognize that controversies may involve some consideration of, or interference with, the internal affairs or management of a foreign corporation without calling for an exercise of visitorial powers over the corporation, and the present tendency of the courts seems to be towards a greater readiness to recognize exceptions to the general rule of noninterference, especially where the corporation is foreign in a technical sense only. * * * In such cases the courts are inclined, in considering the questions of public policy and expediency to determine whether or not jurisdiction should be exercised, to look to the real, practical status of the corporation rather than its technical or mere nominal foreignness.

"Convenience, expediency and justice are to be determined, in part at least, by the location of the books, records, assets and the principal offices of the corporation, the place of residence of the directors and officers, and the place where its business is transacted. Inexpediency, on the other hand, may be based upon comity, legal restrictions, lack of equity on the part of the complainant or lack of power in the court to render or enforce an equitable decree for want of jurisdiction of property or parties,

and unless some such basis is apparent the court should not decline to exercise jurisdiction which it admittedly has.

"Accordingly, where the corporation is foreign in name only and the relief sought is within the general jurisdiction of the court which has before it all parties essential to a full and proper determination of the controversy before it, policy and expediency dictate the exercise of jurisdiction and the settlement of the controversy, even though it involves the internal affairs or management of the corporation if it does not call for the exercise of true visitorial powers. And this rule has been followed where as to the primary relief sought the case was squarely within it although complainant also sought visitation as secondary relief which the court refused to grant. Of course, where all considerations of convenience, efficiency and justice point to the domiciliary courts as the appropriate tribunals for the determination of matters involving the internal affairs of a corporation, those of another state will refuse jurisdiction."

The following decisions and authorities fully support the rule: Sharp v. Big Jim Mines, 39 Cal. App. 2d 435, 103 P. 2d 430 (6/10/1940), (a suit to enjoin the levy of an assessment on the corporate stock of the defendant, an Arizona corporation with all parties, property, business, offices and records in California.); Cunliffe v. Consumers' Assn. of America, 280 Pa. 263, 124 A. 501, 32 A. L. R. 1348 (a Delaware corporation with all of its business, officers in Pennsylvania. A suit for receiver because of corporate mismanagement.); Corry v. Barre Granite & Quarry Co., 91 Vt. 413, 418, 101 A. 38, 40 (stockholder attacked wrongful conduct of officers in attempted disposal of corporate assets. Defendant was chartered in Maine expressly for the purpose of doing business in Vermont, where its property was. Court held it entitled to the relief "*even if it involves an interference with the internal affairs of the corporation.*") (Italics ours.); Mayer v. Oxidation Products Co., 110 N. J. Eq. 141, 154, 159 A. 377, 382 (Delaware corporation with its business in New Jersey. Accounting and restitution ordered of property misappropriated. Reviews many cases, and states: "The rule in most of the states is that, where the court has jurisdiction

of the person of necessary parties, it may grant relief *even though the suit involves the internal affairs of a foreign corporation; \* \* \**'') (Italics ours.) ; Williamson v. Missouri-Kansas Pipe Line Co., 7 Cir., Ill., 56 F. 2d 503, 508 (A suit against two Delaware corporations, doing no business there and having no office except such as necessary to maintain corporate existence. All other physical manifestations in Illinois. Relief granted against manipulation of shares of stock, disposal of assets, wrongful interference with corporate functions. Restitution and receivership ordered. The court distinguishes and interprets its own case of Wallace v. Motor Products Corp., 6 Cir., Mich., 25 F. 2d 655, 658, and other cases relied upon by appellee herein. It states: *"In such instances [property in the forum] courts are not warranted in declining to exercise jurisdiction merely because the act complained of involves internal affairs and management of the corporation;"* [Italics ours.] ) ; Harr v. Pioneer Mechanical Corp., 2 Cir., N. Y., 65 F. 2d 332 (Certiorari denied, 290 U. S. 673, 54 S. Ct. 92, 78 L. Ed. 581.) (Delaware corporation with everything in New York. Internal affairs involved. Jurisdiction assumed but relief denied in trial on merits because of prior Delaware decisions.) ; Babcock v. Farwell, 245 Ill. 14, 91 N. E. 683, 137 Am. St. Rep. 284, 19 Ann. Cas. 74 (Suit against British corporation with all physical manifestations in Illinois.) ; Stapler v. El Dora Oil Co., 27 Cal. App. 516, 150 P. 643 (Mandamus against Arizona corporation and directors to call a stockholders' meeting was issued and sustained. Subject matter and parties all in California.) ; Kawfield v. Illinois Refining Co., 169 Okla. 75, 35 P. 2d 961 (Illinois corporations with business and property within the forum. Receiver was appointed.) ; General Sherman Consol. Gold Mines Ltd. v. Burris, 172 Wash. 142, 19 P. 2d 665 (Nevada corporation with offices and officers in Washington and property in California. Relief granted to recover misappropriated property from president.) ; Voorhees v. Mason, 245 Ill. 256, 91 N. E. 1056 (Suit against directors of Delaware corporation for accounting and restitution for issuing stock to themselves at fifty cents on the dollar.) ; Travis v. Knox Terpezone Co., 215 N. Y. 259, 109 N. E. 250, L. R. A. 1916A, 542, Ann. Cas. 1917A, 387 (New Jersey corporation with

offices and officers in New York. Transfer of stock on the books ordered.); Evans v. R. W. Evans & Co., 284 Pa. 126, 130 A. 313 (Delaware corporation in New Jersey. Transfer of stock ordered.); Cochran v. Shetler, 286 Pa. 226, 133 A. 232 (Receiver appointed for Delaware corporation in Pennsylvania.); Conerty v. Butler County Oil Co., 301 Pa. 417, 152 A. 672 (Mandamus for inspection of corporate books of Arizona corporation in Pennsylvania granted and affirmed.); Balch v. Investors' Royalty Co., D. C. Okla., 7 Fed. Supp. 420 (Delaware corporation with business, office, records in Oklahoma. Individual defendants were guiding geniuses in management of corporation. The board issued large amount of stock for alleged services. Decree ordering an accounting and cancelling stock but holding receivership unnecessary.); Hill v. Dealers Credit Corp., 102 N. J. Eq. 310, 140 A. 569 (Business, assets, officers of Delaware corporation in forum. Custodial receiver appointed.); Saltz v. Saltz Bros., Inc., 65 App. D. C. 393, 84 F. 2d 246 (Connecticut corporation with all its business in Washington, D. C. Petition for receiver denied by Superior Court of District was reversed. Defendant was incorporated for reasons of convenience in Connecticut); Potter v. Victor Page Motors Corp., 300 F. 885 (Foreign corporation. All matters and activities in forum. Solvent, but losses threatened. Receiver appointed to conserve assets, liquidate property and distribute its local property.). Other cases and authorities in point without further specification are: State ex rel. Watkins v. North American Land & Timber Co., 106 La. 621, 31 So. 172, 87 Am. St. Rep. 309; Scholl v. Allen, 237 Ky. 716, 36 S. W. 2d 353; Burnrite Coal Briquette Co. v. Riggs, 274 U. S. 208, 47 S. Ct. 578, 71 L. Ed. 1002, 1005 (receivership); Starr v. Bankers Union of the World, 81 Neb. 377, 116 N. W. 61, 129 Am. St. Rep. 684; United Milk Products Corp. v. Lovell, 6 Cir., Ohio, 75 F. 2d 923 (Certiorari denied, 295 U. S. 751, 55 S. Ct. 831, 79 L. Ed. 1696); Wettengel v. Robinson, 288 Pa. 362, 136 A. 673; Guilford v. W. U. Tel. Co., 59 Minn. 332, 61 N. W. 324, 50 Am. St. Rep. 407; Frick v. Hartford L. Ins. Co., 98 Conn. 251, 119 A. 229, enforcing judgment in case of same title in 179 Iowa 149, 159 N. W. 247; American Creosote Wks. v. Powell, 5 Cir., La., 298 F. 417 (Certiorari denied, 265 U. S. 595, 44 S. Ct. 638, 68 L. Ed. 1198) (Appeal from a decree

in a stockholders' suit in Powell's favor directing the annulment of the proceedings of stockholders and directors providing for the issuance of additional stock out of the stock in the treasury, the annulment and cancellation of the actual shares of stock issued thereunder. To the defense that the bill involved the internal affairs of the corporation, which were litigable only in Maryland, the domicile of the corporation, the court said: "We think both reason and authority are against this position. * * * It has never been held that the court having jurisdiction by proper process of a corporation and its officers is without jurisdiction to extend the full relief asked for in the bill, merely because of the fact that the controversy involves internal management and the corporation is domiciled in a state other than that of the forum."); 12 R. C. L. 33, 34; Wait v. Kern River Mining, etc. Co., 157 Cal. 16, 21, 106 P. 98, 100 (Arizona corporation with office, business and property in California). The court said: "Defendant corporation was, as we have seen, organized under the laws of Arizona. *But for all practical purposes, according to the record, it is a California corporation.* Its contemplated business was all to be transacted in this state, all of its property is here and it does business nowhere else. As was said by Judge Lurton of another corporation in Young v. South Tredeger Co., 85 Tenn. 189, 4 Am. St. Rep. 752, 2 S. W. 202, 'its whole tangible and ponderable substance is in this state.' It is a foreign corporation only in the sense that it is created in another state, and continues to enjoy corporate life by permission of that state. In every other sense, it is solely a California corporation. So far as it in fact does or can do business at all, it does it solely by permission of this state, and within its borders. *Under such circumstances its residence in Arizona, or anywhere else outside of California, is the merest fiction."* (Italics ours.); Levy v. Pacific Eastern Corp., 53 Misc. 488, 275 N. Y. S. 291; Beard v. Beard, 66 Ore. 512, 133 P. 797, 134 P. 1196; Weinstein v. Aeolian Co., 243 App. Div. 355, 277 N. Y. S. 230 (Rescission of exchange and surrender of stock, for fraud, injunctive relief and accounting to plaintiff for all stockholders does not involve management of internal affairs.); National Guar. Credit Corp. v. Worth & Co., 274 Pa. 148, 117 A. 914 (Suit for accounting,

restitution, injunction, receivership to preserve property.); Ernst v. Rutherford, 38 App. Div. 388, 56 N. Y. S. 403; Miller v. Quincy, 179 N. Y. 294, 72 N. E. 116, 118; Tasler v. Peerless Tire Co., 144 Minn. 150, 174 N. W. 731 (receiver); State ex rel. v. Circuit Court of Dodge County, 176 Wis. 198, 186 N. W. 732; Wineburgh v. United States Adv. Co., 173 Mass. 60, 53 N. E. 145, 73 Am. St. Rep. 261 (Holmes, J.); Ernst v. Elmira Mun. Imp. Co., 24 Misc. 583, 54 N. Y. S. 116 (enjoining unauthorized issue of stock); Voorhees v. Mason, 245 Ill. 256, 91 N. E. 1056; Edwards v. Schillinger, 245 Ill. 231, 91 N. E. 1048, 33 L. R. A., N. S., 895, 137 Am. St. Rep. 308 (Fraudulent dividends set aside.); Busch v. Riddle Co., 92 N. J. Eq. 265, 114 A. 348; Steitz v. Old Dominion Co., 89 N. J. Eq. 265, 104 A. 214, 215; Ganzer v. Rosenfeld, 153 Wis. 442, 443, 141 N. W. 121; London Bank v. Aronstein, 9 Cir., Cal., 117 F. 601; 20 C. J. S. 101 et seq., sections 1880, 1881; American Seating Co. v. Bullard, 6 Cir., Mich., 290 F. 896; Kraft v. Griffon Co., 82 App. Div. 29, 81 N. Y. S. 438 (injunction); Richardson v. Clinton Wall Trunk Mfg. Co., 181 Mass. 580, 64 N. E. 400; Kelly v. Thomas, 234 Pa. 419, 83 A. 307, 51 L. R. A., N. S., 122; 23 Am. Jur. 430, section 433; Lowe v. R. P. K. Metal Co., 91 Conn. 91, 99 A. 1, L. R. A. 1917D, 291 (receiver of property in the forum); State ex rel. Wurdeman v. Reynolds, 275 Mo. 113, 204 S. W. 1093; Cumberland Tel. & Tel. Co. v. State, 98 Miss. 159, 53 So. 489; First Bank Stock Corp. v. Minnesota, 301 U. S. 234, 57 S. Ct. 677, 81 L. Ed. 1061, 113 A. L. R. 228; Fudickar v. Louisiana Inv. Co., La., 13 F. 2d 920; Backus v. Finkelstein, 23 F. 2d 357, 366, 531, appeal dismissed, 8 Cir., Minn., 31 F. 2d 1011 (North Dakota corporation in Minnesota. While receiver was not appointed, the court held it had authority to appoint general receiver for foreign corporation having property and officers within the jurisdiction of the court. The court said: "It is now well settled that the relief to be granted may be substantially the same [as domestic corporations] in the case of foreign corporations, where the property and officers * * * are within the jurisdiction of the court."); Restatement of the Law (Conflict of Laws), Scope Note, 279, 280. Where parties are in the forum, court may inquire into internal affairs. "In the exercise of its discretion, the courts take into consideration a number of fac-

tors, the most important of which is whether the corporation is only technically a foreign corporation or whether its 'foreign' character is economic as well as legal.'' Woods v. Consolidated Newspapers, 275 Ky. 479, 122 S. W. 2d 112; Machen v. Machen & Mayer Elec. Mfg. Co., 237 Pa. 212, 85 A. 100, 104, 42 L. R. A., N. S., 1079, Ann. Cas. 1914B, 420; Krouse v. Brevard Tannin Co., 4 Cir., N. C., 249 F. 538; Arn v. Bradshaw Oil & Gas Co., 5 Cir., Tex., 93 F. 2d 728 (Certiorari denied, 310 U. S. 646, 60 S. Ct. 1096, 84 L. Ed. 1413, trial on merits affirmed 108 F. 2d 125.); Kehaya v. Axton, D. C. N. Y., 30 F. Supp. 838; Beale on Foreign Corporations, section 309; Gere v. Dorr, 114 Minn. 240, 130 N. W. 1022; 18 A. L. R. 1397; 32 A. L. R. 1348; 89 A. L. R. 741; State v. United States Express Co., 81 Minn. 87, 83 N. W. 465, 50 L. R. A. 667, 83 Am. St. Rep. 366; 44 Harvard Law Rev. 437; 20 C. J. S. 99, section 1879 (Pocket Supplement, page 4); Hamm v. Christian Herald Assn., 236 App. Div. 639, 260 N. Y. S. 743; Pontiac Trust Co. v. Newell, 266 Mich. 490, 254 N. W. 178 (There is a distinction between receiver of corporation and receiver of its property.); McHarg v. Commonwealth Finance Corp., 195 App. Div. 862, 187 N. Y. S. 540 (Receivership to preserve assets.); Simms v. Garrett, 114 W. Va. 19, 170 S. E. 423; 18 Minn. Law Rev. 192 et seq. (1933–34); 31 Michigan Law Rev. 682 et seq. (1932–33). The writer of the article states on pages 691, 692: ''What is to be done in the common situation of a corporation organized in a foreign State for the purpose of doing all or most of its business in the local jurisdiction? That is, where the corporation's books, officers, directors and property are in the local jurisdiction? This sort of case could well be regarded as *sui generis.* * * * It would for many purposes be desirable, even though entailing sacrifice of time-honored concepts, to treat the migratory corporation as a resident of the jurisdiction in which it 'settles,' and to administer the law accordingly.'' The writer in speaking of the terms ''visitorial'' and ''internal affairs'' is reminded of the words of Justice Cardozo, 44 Harvard Law Rev. 682, at 689: ''The repetition of a catchword can hold analysis in fetters for fifty years and more.'' 33 Columbia Law Review 492 et seq. (1933); 29 Columbia Law Review 1 et seq., pages 968 et seq.; 8 Thompson on Corporations, 3d Ed., 963, section 6698; Bradbury v. Chicago, R. I. & P. Ry., 149 Iowa 51, 59, 128 N. W. 1, 40 L. R. A., N. S.,

684; Lydia E. Pinkham Med. Co. v. Gove, 298 Mass. 53, 59, 9 N. E. 2d 573, 576 (Plaintiff, a Maine corporation sued officers residing in Massachusetts, where principal place of business was, alleging breach of fiduciary obligations injuring corporation. The fact that internal affairs were to some extent involved held not to bar the suit. "The principle of forum non conveniens ought to be applied with caution." The earlier Massachusetts cases supporting the principle were held not controlling under the facts.).

We find no merit in the contention of appellee that suit of appellant under chapter 387 is the attempted exercise of unlawful visitorial power over the appellee, or an interference with its internal affairs, and that the court is without jurisdiction, for several reasons: (1) The appellee in entering the State with all its tangible matters made itself amenable to all laws of the State; (2) this suit is in the name of the State for the benefit of the public and the State has the sovereign power to exercise its right of visitation over the corporation, and its internal affairs; (3) many of the matters do not involve internal affairs of the appellee; (4) the jurisdiction of the court is beyond successful dispute, and every consideration of public policy, convenience, expedience, efficiency, and justice demand that the courts of this state exercise jurisdiction. Here are all of the parties, the records, the property, the books. Any decree can be made effective and enforced. No law of Delaware needs to be construed. This court would be derelict in its duty to the public, and to all parties interested, if it declined jurisdiction and compelled the plaintiff to seek relief in the courts of Delaware, in violation of every consideration above set out. As said by the Kentucky court in Scholl v. Allen, supra, 237 Ky. 716, 726, 36 S. W. 2d 353, 358: "The vague principle that courts will not interfere with the internal affairs of a corporation whose foreignness is at best a metaphysical concept must fall before the practical necessities of the modern business world."

No right of appellee under either the Constitution of the United States or of the state of Iowa has been violated. Section 1 of Article IV of the Federal Constitution is the full faith and credit provision. No act, record, or judicial pro-

ceeding of Delaware has been denied faith and credit. Simply because that State chartered the appellee does not require Iowa to admit it to transact business within its borders unconditionally. Scottish U. & N. Ins. Co. v. Herriott, supra, 109 Iowa 606, 611 et seq., 80 N. W. 665, 77 Am. St. Rep. 548.

Over seventy years ago in Paul v. Commonwealth of Virginia, 75 U. S. (8 Wall.) 168, 19 L. Ed. 357, the Supreme Court of the United States held that a foreign corporation, of the character of appellee, was not a "citizen," under section 1 of the 14th Amendment, which could enter a state other than that of its creation, in violation of conditions imposed by that state. The rule has never been changed. The appellee is being treated the same as all foreign and domestic corporations of its class. It has been deprived of no property right under the due process clause of either constitution. It has been subjected to no arbitrary or unreasonable conditions, and it has been granted equal protection of the laws. Ballantine, Private Corporations, page 848, section 287; 8 Thompson on Corporations, 3d Ed., 816, section 6594; 23 Am. Jur. 262, section 286.

IV. Ground 17 of the motion is: "Chapter 387, * * * is so vague, indefinite and uncertain that the courts are unable to determine with any reasonable degree of certainty what the Legislature intended, and is so incomplete, conflicting and inconsistent in its provisions that it cannot effectively be applied or enforced; that by reason of such uncertainty and indefiniteness, the statutes in question are null and void in that they deprive this defendant of its property without due process of law," under the due process clauses of the Federal and State Constitutions.

Appellee blows hot and cold but the breeze is always a favoring one to it. In Division II of its brief and argument, appellee was very certain that each section was very clear in its meaning and purpose. We need not discuss the proposition as a matter of law, because it has no factual foundation. It appears to us that there is no real difficulty in understanding the language used, and all parts of the chapter, or in construing the chapter so as to make it effective

in accord with the legislative intent. There is neither ambiguity nor repugnancy in its parts. For that reason, there is little need for construction, and Elks v. Conn, 186 Iowa 48, 172 N. W. 173; Tolerton & W. Co. v. Board, 222 Iowa 908, 270 N. W. 427; State v. Chumley, 229 Iowa 579, 294 N. W. 764, cited by appellant, and Davidson Bldg. Co. v. Mulock, 212 Iowa 730, 235 N. W. 45, and cases from other courts, cited by appellee, have little application other than to call attention to general rules of statutory construction. Chapter 387 is in pari materia with chapters 385 and 386, and they are connected by express application and they must be considered and construed together to ascertain the reason, spirit and intendment of chapter 387. See State v. Sherman, 46 Iowa 415, 422; Smith v. Sioux City Stock Yards Co., 219 Iowa 1142, 1151, 260 N. W. 531; Drazich v. Hollowell, 207 Iowa 427, 429, 223 N. W. 253, 254; State ex rel. Ingram v. Larson, 224 Iowa 509, 514, 275 N. W. 566.

In passing upon the constitutionality of a statute, a court must keep in mind that every reasonable doubt must be resolved in favor of its constitutionality. This ground has no reasonable basis.

V. Ground 9 of the motion is:

"It appears affirmatively on the face of the petition that this defendant corporation at all times material to the cause of action held a permit to transact business as a foreign corporation in the State of Iowa and pursuant to an Act of the 43rd General Assembly, Iowa, effective July 4, 1929, it was exempt from the requirement that it file with the Secretary of State of the State of Iowa certificates with respect to the issuance of its capital stock."

There would be some force to appellee's argument had not the Legislature clearly indicated in its enactment of chapter 387 that this chapter was the legislative requirement for the procuring of permits to transact business in Iowa, by foreign public utility corporations, rather than chapter 386. The title to the Act set out in chapter 387 specifically mentions this requirement, and it is made a part of the body of the

Act, by the provision in section 8433 including by reference the pertinent sections of chapter 386. The appellee—and when we use that term in this opinion, we mean the Utility Company since it alone has submitted an argument—in division II of its argument, has argued that this requirement of chapter 387 was intended to apply to "holding companies" only. There is no reasonable basis for such a construction. It is simply a suggested conjecture. If chapter 386 applies to utility corporations operating plants, why does it not also apply to corporations which are merely the customary utility "holding companies?" We must conclude that foreign utility corporations are granted permits because of chapter 387. Appellee argues that it holds its permit under chapter 386, but that is assuming a fact not alleged in the petition. It is a general rule of statutory construction, that, where there is a statute covering a general subject matter, and another statute covering a special part of that subject matter, the special statute will control and take precedence over the general statute. This would seem to be particularly true where the special statute is enacted later. In such matters, it is uniformly held that the general must yield to the particular. See Burlington v. Leebrick, 43 Iowa 252, 258; Arnold v. Council Bluffs, 85 Iowa 441, 445, 52 N. W. 347; Workman v. District Court, 222 Iowa 364, 368, 269 N. W. 27; McKinney v. McClure, 206 Iowa 285, 220 N. W. 354; Great Western Accident Ins. Co. v. Martin, 183 Iowa 1009, 166 N. W. 705. It is also a rule of statutory construction that any proviso, exemption, or exception in any statute contrary to or in derogation of its general enacting clause must be strictly construed. Palmer v. Board, 226 Iowa 92, 94, 283 N. W. 415; United States v. Dickson, 40 U. S. (15 Pet.) 141, 10 L. Ed. 689. "Exceptions, as a general rule, should be strictly, but reasonably, construed; they extend only so far as their language fairly warrants, and all doubts should be resolved in favor of the general provision rather than the exception." 59 C. J. 1092. See also Reaves v. State, 181 Tex. Crim. Rep. 488, 50 S. W. 2d 286. In Hawkeye P. C. Co. v. Chicago, R. I. & P. Ry., 198 Iowa 1250, 1255, 201 N. W. 16, 18, we said:

"We are not privileged to read into the statute an exception not found therein. * * * It is well defined that statutes intended for public benefit are to be taken most strongly against those who claim rights or powers under them, and most favorably to the public. * * * The proviso in question creates special exceptions, and those who claim the exception must establish it as being within the words, as well as the reason thereof."

There is, therefore, no impelling reason why we should interpolate chapter 387 in the clause of exception now appearing in section 8416, when the 43d General Assembly failed to include it when it excepted chapter 386 by amendment in chapter 14 of its Acts, by Senate File No. 239, and also failed to include it when it excepted chapter 417, in chapter 15 of its Acts, by House File No. 433. This court has no right to assume that its omission was an inadvertence, and in view of the fact that the Legislature never considered chapter 386 as applying to foreign utility corporations, it is more reasonable to believe that chapter 387 was omitted from the exception intentionally. To hold otherwise would be to assume that the Legislature intended to treat a "technical" foreign corporation doing business within the State as a domestic corporation and in competition with domestic utility companies, more favorably than the latter. It may be fairly assumed that most foreign corporations included in chapter 386 are foreign corporations by creation and by actual residence, and simply transact business in Iowa as but a part of their general foreign business, and there is sound reason for making distinctions between them and a foreign utility corporation which has "settled" in the state. It is our conclusion that the appellee has never been exempted from complying with section 8416, and that ground 9 of the motion is without merit.

VI. Ground 11 of the motion is:

"Until adjudged void by a court of competent jurisdiction in an appropriate proceeding, the capital stock of this corporation in any event is valid and, pending such an ad-

judication, is fully vested with all of the rights and privileges of valid stock; and any corporate action had upon the affirmative vote of such stock, including the plan of re-capitalization adopted by the stockholders at a meeting held August 1, 1938, was valid, and the validity of any stock issued under such plan of re-capitalization cannot be attacked directly or collaterally."

Authorities from other jurisdictions are about evenly divided in their holdings on the question of whether corporate stock, issued contrary to statutory provisions declaring it void, is in fact void or only voidable. Appellee states that discussion of these authorities would serve no purpose in view of our own decisions. The determining factor is the statute itself and its purpose. Precedents in this matter are of little aid in reaching a right conclusion in a particular instance. In Van Shaack v. Robbins, 36 Iowa 201, 205, and Pangborn v. Westlake, 36 Iowa 546, 549, Justice Cole stated the rule correctly, and in each case rightly held that the word "void" meant "voidable" because that was the obvious intendment of the respective statutes. In the first case, the court said:

"* * * its true meaning is always to be determined from all the language used and the intent thereby manifested" and in the second case are these words: "* * * yet the courts will always look to the language of the statute, the subject-matter of it, the wrong or evil which it seeks to remedy or prevent, and the purpose sought to be accomplished in its enactment; * * *."

Appellee relies upon Sherman v. Smith, 185 Iowa 654, 169 N. W. 216; Bankers Trust Co. v. Rood, 211 Iowa 289, 294, 233 N. W. 794, 73 A. L. R. 1421; and Ramsay v. Crevlin, 8 Cir., Colo., 254 F. 813, in their construction of section 8417, referring to domestic corporations, as it appeared in earlier Codes. Other cases not cited, but having some references to the matter, are Lone Tree Bank v. Timmerman, 193 Iowa 1320, 188 N. W. 856, Central Distributing Co. v. Mulroney, 196 Iowa 38, 194 N. W. 295, and First National Bank v. Fulton, 156 Iowa 734, 137 N. W. 1019.

Let us measure these decisions with the yardstick given us by Justice Cole, and uniformly conceded to be the correct one. When chapter 387 was enacted it was sought by amendment to make the penalizing sections of chapter 385 (sections 8417, 8418 and 8419) the penalizing sections of chapter 387. The decision in First National Bank v. Fulton, supra, had just been handed down. The amendment was rejected and sections 8437 and 8438 were adopted. A reading of the two sets of sections will show considerable difference in them. The two latter sections, in clear and definite language, show an unmistakable purpose and peremptorily and plainly notify courts and juries that there must be no evasion of the accomplishment of the legislative intents and purposes. In section 8417, the stock is declared to be void, but the language immediately following may fairly be interpreted to mean that a suit by the Attorney General is necessary to consummate the nullity by a decree of cancellation. Provision is also made for restitution of or recompense for any consideration received for the stock. But in section 8437 there are no such provisions. The stock is declared void absolutely and unconditionally without any action by the Attorney General or by anyone else. The declaration that the stock is void is self-executing. The language clearly shows that the purpose of the legislation was to prevent the holders of such spurious stock from taking any part in the management or control of the corporation. The interpretation of the appellee would most effectively defeat the object sought to be accomplished by the Legislature. It would be an easy matter to so place the unlawful issues of stock as to control every corporate vote. As stated by the Wisconsin court in First Avenue Land Co. v. Parker, 111 Wis. 1, 4, 86 N. W. 604, 605, 87 Am. St. Rep. 841:

"It is, of course, obvious that, if this position is sound to its full extent, section 1753 is very much emasculated, for that doctrine would give practical validity to stock which the statute declares shall be void. It would likewise give practical existence and validity to stock beyond the power of the corporation."

In Cook on Stock and Stockholders, section 292, cited in Pruitt v. Oklahoma Steam Baking Co., 39 Okla. 509, 135 P. 730, and re-cited in State v. Hardister, 108 Okla. 64, 237 P. 75, is this language:

"Overissued stock, no matter how overissued, represents nothing, and is wholly and entirely valueless and void. So rigid and well established is this rule, that not even a *bona fide* holder of such stock can give to it any validity or vitality."

5 Fletcher, Cyc. Corp., 5765, section 3486, states:

"Stock issued without authority and in violation of law is void, and confers no rights on the person to whom it is issued * * *."

Appellee argues at length about the rights of bona fide purchasers of stock. There is no basis for such argument in the allegations of the petition. Whatever may be its value as a defense, its proper place in this suit is in an answer. If it is a defense, it is a defense for such a stockholder, and not for a corporation which unlawfully issued the stock, in an action in the name of the State for the protection of its citizens. In section 8438 protection is reserved for those who hold stock not in violation of the chapter.

Language more plainly and vigorously expressing the intention of the Legislature that stock issued in violation of chapter 387 is absolutely void, ab initio, could hardly have been used, particularly when it is capped with the mandate: "* * * and courts and juries shall construe this chapter so as to prevent evasion and to accomplish the intents and purposes thereof." Section 8437, Code of 1939. For this court to disregard the injunction as urged by appellee would be most flagrant judicial legislation. Our decisions cited by appellee, for the reasons herein stated, are not applicable and do not control under the facts in this case. Their real holding is that a collectible promissory note given for capital stock is not "void" and is not a violation of the statute. In Tramp v. Marquesen, 188 Iowa 968, 176 N. W. 977, a stock subscription was held violative of the statute because the purchase price was fixed at less than par value, and was not enforcible.

VII. Grounds 12 and 13 of the motion are:

"12. The exchange of outstanding shares of capital stock of this corporation for the same or a different kind or class of capital stock, pursuant to an amendment to the Articles of Incorporation, without the receipt of any new consideration by the corporation, and the issuing of certificates for such new stock, does not constitute an issuance of stock for property within the contemplation of the statutes of Iowa relating to the issuance of stock; and the authorization of the Executive Council of the State of Iowa, or the filing of certificates of issuance of such stock with the Secretary of State, are not necessary or required."

"13. The statutes of the State of Iowa do not now or never have prohibited the issuance of no par stock by foreign corporations doing business in the State of Iowa."

Of course, if a corporation reduced the par value per share of its capital stock from $100 to $10, and then issued to each of its stockholders ten shares of its new stock for each share of $100 par-value stock held by him, there would be no increase in the capital of the corporation and no change in the interest of any stockholder. The capital would simply be divided into more fractional parts or shares, with a proportionate reduction in the par value of each share. A change in the par value of the shares of capital stock, in itself, does not change the interest of any stockholder in the corporation, providing the shares of stock which he receives represent the same interest which he had before the exchange. Likewise if 10,000 shares of common stock of a par value of $100 per share be increased to, and exchanged for, 20,000 shares of no-par-value stock, and each old share be exchanged for two shares of the new stock, without any capitalization or impairment of any existing surplus or accumulated and undistributed profits, no shareholder is hurt. It is simply a change in the muniments of title for the same property. See Hood Rubber Co. v. Commonwealth, 238 Mass. 369, 131 N. E. 201; Whitman v. Consolidated Gas E. L. & P. Co., 148 Md. 90, 129 A. 22; Cleveland Provision Co. v. Weiss, Ohio, 4 F. 2d 408; Mertz v. Hudson Mfg. Co., 194 Minn. 636, 261 N. W. 472.

Section 8413 provides that payment for capital stock *"in any other thing than money"* (Italics ours) must be with the permission of the Executive Council on application. This provision is not confined to an original issue, but applies to subsequent or substituted issues. Code section 8416 provides that report must be made of the issuance of *any* capital stock. When stock is issued for new stock, it is not issued for money, and the proposition must be submitted to the Executive Council. Such was the official opinion of Attorney General Mitchell on February 19, 1938. The purpose of these statutory provisions is to keep the proper state officers informed of all changes in the capital structure of corporations.

In the corporate action of August 1, 1938, each holder of 7-per cent preferred stock would receive a dividend certificate for $32.08 and 4.2 shares of new common for each share of old common, with similar exchanges for the 6½-per cent and 6-per cent preferred stock. This appears from the allegations of the petition to be merely an arbitrary exchange. It may be a fair exchange but that is a matter which should have been submitted to the Executive Council.

It is our conclusion that there is no merit in grounds 12 and 13 of the motion to dismiss.

VIII. Grounds 14 and 16 of the motion are:

"14. It affirmatively appears on the face of the petition that the capital stock of defendant corporation has been traded in the open market and has now passed to innocent holders for value; that the holders thereof have participated in corporate affairs, received payments on account of dividends, voted at stockholders' meetings, participated in other corporate action, all without objection; and therefore plaintiff is guilty of laches and cannot now challenge the validity of such capital stock."

"16. It affirmatively appears on the face of the petition that this cause of action is barred by the statutes of limitations, more than ten years having elapsed since the issuance of the stock alleged by the plaintiff to have been illegally issued."

Alleged statements of fact, including those that capital

stock of the appellee has been traded in the open market and has passed to innocent holders for value, and the participation of these holders in corporate affairs, are not found in the petition, and are all defensive matters to be set out in some pleading other than a motion to dismiss.

Section 8438 provides that a suit of this kind may be brought by the Attorney General, or by a citizen, in the name of the State of Iowa. The relator is not a stockholder of the appellee, nor is this a stockholders' suit, but it is brought in the name of the State and for the State and its citizens and the general public. We have repeatedly held in analogous situations, where an individual is authorized to bring a suit, the same as though brought by the Attorney General, or a public prosecutor, whether he brings it in his own name, or in the name of the State, it is one for the benefit of the State and the general public. McQuade v. Collins, 93 Iowa 22, 25, 61 N. W. 213; Littleton v. Fritz, 65 Iowa 488, 496, 22 N. W. 641, 54 Am. Rep. 19; Applegate v. Winebrenner, 66 Iowa 67, 68, 23 N. W. 267; Conley v. Zerber, 74 Iowa 699, 39 N. W. 113; Geyer v. Douglass, 85 Iowa 93, 101, 52 N. W. 111.

This suit, having been brought in the name of the State to enforce a statutory obligation on the part of the appellee, which is thereby declared to be the public policy of the State, is not vulnerable to the defense of laches or the statute of limitations. As said by the author in 13 Am. Jur. 1067, section 1147:

"The right of the state to restrain usurpation of power by a corporation which is clearly antagonistic to good public policy is not defeated by any imputation of laches or upon the ground that acquiescence is to be inferred from the failure to invoke the aid of the courts at an early day."

In 23 Am. Jur. 203, section 234, is this statement:

"The state is not estopped from insisting upon prescribed conditions by failure of its officials to require compliance with the law at the proper time."

See also 23 Am. Jur. 223, section 252; State v. American Sur. Co., 90 Neb. 154, 133 N. W. 235, 91 Neb. 22, 135 N. W.

365, Ann. Cas., 1913B, 973; Travelers Ins. Co. v. Fricke, 99 Wis. 367, 74 N. W. 372, 78 N. W. 407, 41 L. R. A. 557; People v. Pullman's Palace Car Co., 175 Ill. 125, 51 N. E. 664, 64 L. R. A. 366.

It is well established that neither the plea of laches nor that of the statute of limitations is of any avail against the general government. See Young v. Charnquist, 114 Iowa 116, 86 N. W. 205, citing United States v. Insley, 130 U. S. 263, 9 S. Ct. 485, 32 L. Ed. 968, and United States v. Dalles Military Road, 140 U. S. 599, 11 S. Ct. 988, 35 L. Ed. 560.

In Perley v. Heath, 201 Iowa 1163, 1165 et seq., 208 N. W. 721, 722, a suit in mandamus by plaintiffs as individuals to compel the county supervisors to construct a bridge over a drainage ditch, required under a general statute, the court said:

"The action is, it is true, by private individuals, but the right is, nevertheless, a public one. * * * Where an action is brought for the sole benefit of the state, although not brought in its name, the defense of the statute of limitations cannot be made. * * * It is held that proceedings in the nature of quo warranto concerning a public right are not barred by the statute of limitations." See also State v. Munn, 216 Iowa 1232, 250 N. W. 471.

Appellee urges, and cites authorities that, under some circumstances, the State, or one of its arms, may be barred by laches or the statute of limitations. If this be true, and we do not pass upon the matter, these particular circumstances are defensive matters which must be pleaded where they do not appear in the petition, and cannot be reached by motion to dismiss. They do not appear in the petition. Laches, in particular, is peculiarly not adapted to being pleaded as a defense in such a motion, because it depends upon many factual circumstances, in addition to lapse of time.

There are many wrongful acts alleged which are well within any applicable statute of limitations. These grounds of the motion are not good.

■ IX. Grounds 1, 2, and 15 are:

"1. The petition fails to state a cause of action against this defendant."

"2. The plaintiff is not entitled to the relief demanded upon the facts stated in the petition."

"15. The plaintiff does not have legal capacity to bring this action, for the reason that it is beyond the constitutional powers of the legislature of the State of Iowa to delegate to a private citizen of the State the right to bring an action in the name of the State of Iowa, and to exercise the powers of the state in the manner allegedly authorized by Chapter 387, Code of Iowa, 1935, and particularly is this true in a situation where a private citizen has no legal or equitable interest in the subject matter of the action, or where the approval of the Attorney General of the State of Iowa, or some other properly designated official of such state, or of court, is not required to be first obtained."

What we have said in preceding divisions disposes of these grounds as having no foundation.

■ X. The trial court erred in striking the allegations of the petition with reference to the appointment of a receiver. This relief is directly authorized by section 8438, and even without statutory authority, a court of chancery has inherent power to grant the relief under its general equitable powers. The stricken allegations were pertinent and material to this relief.

■ XI. Appellee's motion to dismiss the appeal for alleged failure to comply with Rule 30 of this court is overruled without discussion. The matters of procedure involved are simple—a petition, a motion to dismiss, and a general order sustaining the motion. The appellee has filed a 184-page brief and argument without apparent difficulty in ascertaining the matters complained of or the grounds of complaint. We had no difficulty of that kind. The entire record was involved and in such case it is impossible to specify every particular part of the record connected with an assignment of error or proposition for reversal.

 No inferences are to be drawn respecting the merits of the case from anything we have said herein. We are simply holding that the plaintiff was, and is, entitled under the allegations of its petition to a trial on the merits. The appellee has asked us to decide important questions, including the finding that legislative enactments of long standing are contrary to both the Constitution of the United States and of Iowa. Such questions ought ordinarily, if possible, be presented to a court after a full hearing on both the facts and the law. Anderson v. Jester, 206 Iowa 452, 464, 221 N. W. 354. All questions presented have been carefully considered and passed upon, and we believe, correctly. The relief to which the appellant may be entitled will necessarily depend upon the facts established by the evidence. If other parties are necessary to grant full relief, the trial court may bring them in or they may intervene. The court, by the last lines of section 8438, is authorized and directed to protect all rights possessed by those holding capital stock of the appellee *not* in violation of chapter 387.

The judgment and decree is reversed and the cause is remanded to the district court.—Reversed and remanded.

STIGER, GARFIELD, and HALE, JJ., concur.

SAGER, J., concurs in result.

MITCHELL, J., dissents.

MILLER, J., dissents, in which dissent WENNERSTRUM, J., concurs.

MILLER, J. (dissenting)—I am unable to concur in the opinion of the majority herein and respectfully dissent.

Obviously, the briefs and arguments of counsel have presented for our consideration many novel and intriguing questions of law. The majority of this court, in undertaking to dispose of such questions, have, in my judgment, wandered somewhat afield. The result is a complex and complicated opinion which is difficult to analyze or understand. As I see it, the decisive questions are not nearly as difficult as the majority opinion would seem to indicate nor are the facts as complicated

as it makes out. The facts presented to us are determined from the allegations of the petition and the complications arise by reason of inferences which are drawn from conclusions of the pleader, some of which were stricken below but are held to be proper pleading by this court.

According to the petition, the defendant's predecessor was organized about December 21, 1916, as the Centerville Light and Traction Company under the laws of Maine. On February 12, 1923, the name of the Maine corporation was changed to Iowa Southern Utilities Company of Maine. On the same day, February 12, 1923, the defendant, Iowa Southern Utilities Company, was organized under the laws of Delaware and thereafter undertook to acquire the assets of the Maine corporation.

On March 27, 1923, the transfer of assets between the two corporations was authorized as well as the issuance of capital stock therefor in the sum of $1,160,800 and this was approved by the executive council of Iowa. On September 30, 1924, the executive council of Iowa approved another application for the issuance of stock amounting to $1,520,000 by the Iowa Southern Utilities Company of Delaware for property instead of cash. Accordingly, the petition alleges that the executive council of Iowa authorized the issuance of stock by the Iowa Southern Utilities Company of Delaware for property to the extent of $2,680,000.

Plaintiff contends that stock to the extent of $638,500 was issued for property over and above the amount authorized by the executive council of Iowa. Plaintiff also asserts that 10,000 shares of stock were issued for no-par value during the years 1923, 1924 and 1925 and contends that there was no authority under the laws of Iowa for the issuance of such stock. All of the stock referred to in this paragraph is asserted to be void ab initio and to have had no voting rights.

Plaintiff also asserts that since August 15, 1925, 12,550 shares of stock have been issued, part of which was issued without receiving full par value in cash; plaintiff does not say exactly how much of said stock was so issued, but contends that it was approximately of the face value of $600,000.

Plaintiff also contends that on January 12, 1927, the articles of incorporation were amended to provide for the issuance of 100,000 shares of common stock of no-par value and for the exchange of outstanding stock for this new stock; plaintiff contends that all of the stock issued pursuant to such authorization is void ab initio.

Plaintiff also contends that on August 1, 1938, at a stockholders' meeting, all outstanding stock was recapitalized, that at said meeting stockholders were permitted to vote whose stock was void ab initio, the plan of recapitalization was not submitted to the executive .council of Iowa or approved by it. Plaintiff claims that all of the stock issued pursuant to this plan of recapitalization is void ab initio and he seeks the appointment of a receiver to prevent the execution of such plan.

The ·prayer of the petition is lengthy and involved. The relief sought, however, is substantially the following:

1. That the court determine what stock of the Iowa Southern Utilities Company of Delaware is valid and what is void.

2. That stock issued in the amount of $586,761.77 in connection with the issuance of 12,550 shares about May 31, 1933, be determined to have had no voting rights ab initio.

3. That 100,000 shares of common stock of no-par value be determined to have had no voting rights ab initio.

4. That the court decree that the holders of all preferred stock for which full par value was not paid in cash had no voting rights on August 1, 1938.

5. That all common stock claimed by plaintiff to have been void ab initio be decreed to have had no voting rights on August 1, 1938, and all stock issued pursuant to the plan of recapitalization of August 1, 1938, be decreed to be void ab initio with no voting rights.

6. That the officers of the corporation be enjoined from putting into effect the ·plan of recapitalization of August 1, 1938.

7. That a receiver be appointed for the Iowa Southern Utilities Company of Delaware forthwith.

8. That an accounting be had with reference to dividend transactions of the corporation.

9. That the corporation be dissolved and its affairs wound up.

843

10. That the plaintiff have general equitable relief.

Of course, the prayer of the petition is not as concisely stated as I have undertaken to put it. I am persuaded, however, that the foregoing is a proper statement of what the plaintiff is driving at.

Plaintiff alleges that he is a citizen of Iowa. He makes no other claim as a basis for his right to maintain this action. He asserts no interest in the corporate affairs other than that which may be implied from his citizenship. The defendants, other than the Iowa Southern Utilities Company, are alleged to be stockholders and some of them officers and directors, but there is no claim that all stockholders that might be adversely affected by this litigation have been made parties to the action.

As pointed out by the majority, ground 1 of the motion to dismiss contends that the petition fails to state a cause of action against the defendant corporation and ground 2 asserts that the plaintiff is not entitled to the relief demanded upon the facts stated in the petition.

Ground 11 of the motion to dismiss asserts:

"Until adjudged void by a court of competent jurisdiction in an appropriate proceeding, the capital stock of this corporation in any event is valid and, pending such an adjudication, is fully vested with all of the rights and privileges of valid stock; and any corporate action had upon the affirmative vote of such stock, including the plan of re-capitalization adopted by the stockholders at a meeting held August 1, 1938, was valid, and the validity of any stock issued under such plan of recapitalization cannot be attacked directly or collaterally."

Ground 15 of the motion to dismiss asserts:

"The plaintiff does not have legal capacity to bring this action, for the reason that it is beyond the constitutional powers of the legislature of the State of Iowa to delegate to a private citizen of the State the right to bring an action in the name of the State of Iowa, and to exercise the powers of the state in the manner allegedly authorized by Chapter 387, Code of Iowa, 1935, and particularly is this true in a situation where a private citizen has no legal or equitable interest in

the subject matter of the action, or where the approval of the Attorney General of the State of Iowa, or some other properly designated official of such state, or of court, is not required to be first obtained."

In the majority opinion, this action is sustained by reason of the provisions of chapter 387 of the Code, 1939. Section 8433 provides that sections 8412 to 8416, requiring approval of the executive council to the issuance of stock for property other than cash, are made applicable to foreign utility companies. The basis of plaintiff's petition is that certain stock was issued without complying with said sections. Plaintiff contends that, by reason of that fact, the stock is rendered absolutely void ab initio. The majority opinion sustains such contention. The decisive factors, as I see it, are whether this contention is sound and whether plaintiff, as a private citizen, is authorized to maintain an action to secure such an adjudication.

Section 8417 provides as follows:

"The capital stock of any corporation issued in violation of the terms and provisions of sections 8412 to 8416, inclusive, shall be void, and in a suit brought by the attorney general on behalf of the state in any court having jurisdiction, a decree of cancellation shall be entered; and if the corporation has received any money or thing of value for the said stock, such money or thing of value shall be returned to the individual, firm, company, or corporation from whom it was received, and if represented by labor or other service of intangible nature, the value thereof shall constitute a claim against the corporation issuing stock in exchange therefor."

It will be noted that the foregoing section applies to the capital stock of *any corporation* issued in violation of the provisions of sections 8412 to 8416, inclusive. If this language is given effect literally, then the majority opinion is erroneous because it holds that section 8417 has no application whatever to the controversy presented herein.

As noted by the majority, this court, in the case of Sherman v. Smith, 185 Iowa 654, 656, 169 N. W. 216, 218, held that

stock issued contrary to sections 8412 to 8416, inclusive, is not void ab initio, but voidable only, stating as follows:

"We are of opinion that, when the statutes are read together, as they should be, it was not the legislative intention to make stock issued under the conditions at bar ipso facto void, but to make violations of this chapter a cause for having the stock cancelled at the suit of the attorney general, and to inflict other punishments for the violation, which, however, do not include that the stock issue shall be void, instead of voidable. The failure to have the approval of the executive council has been dealt with in this court, and it was held, in First Nat. Bank v. Fulton, 156 Iowa 734, that the clear purpose of the particular statute provision dealing with this point was 'to protect the corporation, as such, against the issue of its corporate stock in payment for property or services or other things at fictitious value.' And it is expressly ruled that a note given for corporate stock issued in violation of this provision may be collected. We have not had occasion to deal with the other violation—the false certificate. But in the law generally, the words 'void' and 'voidable' are frequently used by legislatures interchangeably; and where the word 'void' is used to secure a right to or confer a benefit on the public, it will, as a rule, be held to mean null and incapable of confirmation; but, if used respecting the rights of individuals capable of protecting themselves, it will often be held to mean voidable. See Van Shaack v. Robbins, 36 Iowa 201, and cases cited; and numerous authorities to like effect may be found in our own reports * * * The consideration here was shares of stock. They had infirmities for which they might, on proper action by the attorney general, have been cancelled, and, after being cancelled, they would have furnished no consideration. But, while the shares were issued without complying with all statute directions on the subject, they were still shares of stock whose validity might never be attacked by the authorities of the state."

The foregoing pronouncement is in accord with repeated pronouncements of this court cited in the majority opinion. What is now section 8417 of the Code, 1939, was section 1641-d

of the Supplement of 1913. In pointing out that the word "void" there used has been repeatedly held to mean "voidable", this court states in Bankers Trust Co. v. Rood, 211 Iowa 289, 295, 233 N. W. 794, 797, 73 A. L. R. 1421, as follows:

"Previous consideration has been given by this court to Section 1641-d of the foregoing statutes. Central Distrib. Co. v. Mulroney, 196 Iowa 38; Lone Tree Bank v. Timmerman, 193 Iowa 1320; Sherman v. Smith, 185 Iowa 654; First Nat. Bank of Ottumwa v. Fulton, 156 Iowa 734. Our conclusion upon each occasion was that the word 'void,' used in said section, means 'voidable,' in fact. The section, it was held in the above cited cases, is for the benefit of the corporation. A note given for stock is collectible, although compliance has not been made with this section of the statute."

Again, at page 297, we state:

"Business necessity demands that transfers of these stock certificates be sustained unless unsurmountable legal barriers prevent. Estoppel against the corporation issuing the stock is the principle applied to protect the innocent transferee thereof. [Citing numerous authorities.]"

And, at pages 299 and 300, we state:

"Here there is presented a case where the corporation, before it had exercised its option to declare its issuance of the stock void, permitted the holder of such stock to pledge the same to an innocent transferee for a valuable consideration. The stock not being void from its inception, but only voidable, it is apparent that the corporation has estopped itself from exercising the statutory option. [Citing cases.]"

The foregoing pronouncements of this court are sound and should not be ignored. The opinion of the majority assumes at the outset that section 8417 has no application whatever to the cause of action asserted herein, notwithstanding the fact that section 8417 specifically provides that it is applicable to "the capital stock of any corporation issued in violation of the terms

and provisions of sections 8412 to 8416, inclusive," and the further fact that the only alleged infirmity in the stock of the defendant corporation that is asserted herein arises by reason of the alleged failure to strictly comply with the provisions of sections 8412 to 8416, inclusive. I cannot agree with such holding. It seems to me that there are many reasons why section 8417 should apply to the situation herein presented to us.

While, of course, the petition does not specifically so allege, it must be a reasonable implication that, with the tremendous amount of stock involved, some of it must have been purchased in good faith for full value after it had been issued originally under the circumstances described by the petition. As to such purchasers in good faith, under the repeated interpretations of section 8417, the corporation would be estopped to deny the validity of such stock in the hands of innocent purchasers for value. This is a just rule. The opinion of the majority, however, holds as a matter of law that such purchasers acquired absolutely nothing and their rights, if any, are speculative indeed. The majority opinion holds that the only people entitled to any consideration are those who hold stock issued strictly in accordance with the provisions of the statutes. In my opinion, this is harsh and unjust.

There is another item to be considered. Section 8417 is the only statute that specifically provides for the cancellation of stock issued in violation of sections 8412 to 8416, inclusive. It provides that such cancellation is to be secured in an action brought by the attorney general. There is merit in such a provision. Section 8417 also provides that, where such stock is cancelled, the money paid or the value of the property delivered for the stock shall be returned to the holder of the stock. This is just and equitable. The majority opinion affords no such protection to such holders of stock herein.

The principal reason given for ignoring section 8417 and giving to section 8437 an entirely different interpretation as to the word "void" is the admonition contained in the last clause of section 8437 that courts and juries "shall construe this chapter so as to prevent evasion and to accomplish the intents and purposes thereof." I am unable to agree that such clause

should be held to support such a drastically different interpretation of section 8437 from that repeatedly given by this court to section 8417.

If section 8417 controls as to the remedy herein sought, then the decree should be affirmed because this action is not brought by the attorney general. If, however, this court is to hold that section 8417 does not apply and that section 8437 alone applies, it seems to me that, in interpreting section 8437 as applied to the facts presented by the record herein, we should interpret the word "void" as meaning "voidable". The situation presented herein is the identical situation which is covered by section 8417. It seems to me, therefore, that the rights and liabilities of the parties should be the same no matter which section is applied thereto. The majority opinion in effect says that, whereas a stockholder in a domestic corporation who has acquired stock, which was originally issued in violation of sections 8412 to 8416, has acquired stock that is voidable only and can be cancelled only in an action to which he is a party, a stockholder in a foreign corporation such as the appellee herein, who has acquired stock that was originally issued in violation of sections 8412 to 8416, acquires nothing because his stock is void ab initio and can be cancelled in an action brought by a citizen who has no interest in the corporate affairs and without the stockholder, whose investment is wiped out, being made a party thereto. I can see no just reason for any such distinction.

As pointed out by the majority opinion, the right of the courts to exercise visitorial powers over a foreign corporation does not present a question of jurisdiction or power of the court to act but rather a question of discretion in the court as to whether it will exercise such jurisdiction. On that issue, I am in accord with the position taken by Judge Mitchell in his dissenting opinion herein. It seems to me a strange doctrine that a court should assume jurisdiction to permit a citizen, who claims to have no interest in the corporate affairs of the appellee herein, to bring an action, the avowed purpose of which is to declare invalid the interests of stockholders who are not parties to the litigation and to secure either a reorgan-

ization of the corporation or its dissolution after such strangers to the litigation have been deprived of their rights in the corporate affairs. It seems to me that the trial court exercised a wise discretion in refusing to entertain such an action. I would affirm.

WENNERSTRUM, J., concurs in this dissent.

MITCHELL, J. (dissenting)—I find myself unable to agree with the majority and respectfully dissent.

In the majority opinion, they state:

"The appellee contends that the provisions of Chapter 387 are void and their attempted enforcement against it are unlawful, and that the courts of this state have no power or jurisdiction to grant any of the relief prayed for because to do so would be the exercise of visitorial power over the appellee, and interference with its internal affairs.

"There was a time when courts would have given weight to such a statement, but we may now say it is uniformly conceded that the question is not one of jurisdiction or power in the court of a state which is not the legal domicile of a foreign corporation, but it is a question rather of *discretion* in the court as to whether it will *exercise* jurisdiction. It is a question of the balance of convenience, of whether considerations of public policy, efficiency, expedience and justice to all parties interested demand that jurisdiction be retained in the foreign court, or that it be declined under the rule of forum non conveniens. The rule is thus stated by the Supreme Court of the United States in the majority opinion in Rogers v. Guaranty Trust Co., 288 U. S. 123, 131, 53 S. Ct. 295, 298, 77 L. Ed. 652, 657, 89 A. L. R. 720: 'Obviously no definite rule of general application can be formulated by which it may be determined under what circumstances a court will assume jurisdiction of stockholders' suits relating to the conduct of internal affairs of foreign corporations. But it safely may be said that jurisdiction will be declined whenever considerations of convenience, efficiency and justice point to the courts of the State of the domicile as appropriate tribunals for the determination of the particular case.' "

With the above-cited rule from the United States Supreme Court opinion, I have no fault to find, but it seems to me, taking into consideration the convenience, the efficiency and the justice in the case at bar, which are the three things that the Supreme Court of the United States says should be taken into consideration, would justify this court in holding that the appropriate tribunal for the determination of the questions involved in this case would be the courts of the domicile of the appellee company. The circumstances and the facts in the case of Rogers v. Guaranty Trust Co., 288 U. S. 123, 53 S. Ct. 295, 77 L. Ed. 652, 89 A. L. R. 720, relied upon by the majority, are entirely different than in the case at bar. In the Rogers case, it was an action brought by a stockholder against the officials of the corporation. Certainly the justice of that case demanded that the high officials of the tobacco company should not be permitted to secure for themselves and others stock at a price which was then about one fourth of the market value. But in the case at bar, it is not a stockholder that has brought this action; it is not a public official or the state of Iowa, but it is some individual who is not trying to save the stockholders of the corporation money. In the Rogers case the parties were in court. In this case not all of the interested parties are in court. Under the majority opinion, as I read it, the appellee corporation, which it is conceded is solvent, and in which there are no stockholders complaining, will be forced into a receivership just to satisfy the desires of some individual who has no interest financially in the corporation which he is seeking to throw into receivership. The majority call attention to the sole dissent by Justice Stone in the Rogers case and I have no fault to find with the dissent but I quote from Justice Stone's dissent:

"We are presented with no problem of administration. The only relief which the petitioner merits on the record before us or which he asks here is a decree that certain directors, now before the Court, restore to the treasury of the corporation, also before the Court, certain shares of stock alleged to have been illegally issued to them, and that certificates for the stock now in possession of the trustees, who are likewise before the

Court, be surrendered. There are no more obstacles to the rendition of an effective decree than in any other case in which a stockholder seeks reparation for depredations upon the corporate property committed by directors, some of whom only are before the Court." (Citing cases.) 288 U. S., at page 145.

And so Justice Stone points out that all that is asked in the Rogers case is that certain directors who were before the court restore to the treasury of the corporation, also before the court, certain shares of stock illegally taken, and then he says:

"* * * that jurisdiction will be declined whenever considerations of convenience, efficiency and justice point to the courts of the state of the corporate domicile as appropriate tribunals for the determination of the particular case." 288 U. S., at page 145.

How anyone can say that justice demands that the Iowa court take jurisdiction in this case is more than I can figure out. And as I read the majority opinion, the result of the opinion will be that innocent men and women who purchased the stock of this corporation, who purchased the bonds of this corporation, who were not parties to the claimed fraud, and who are not parties to this cause of action, will suffer material financial losses.

The majority calls attention to the case of Foresters v. Scott, reported in 223 Iowa 105, 272 N. W. 68. The only question with which the court was there confronted was whether certain books and papers should be produced. The sole question decided was whether the lower court had jurisdiction to enter the order directing the production of books and papers. The defendant company was a party to that action and was in court.

In a recent opinion in this court, Graeser v. Phoenix Finance Co., reported in 218 Iowa 1112, 1130, 254 N. W. 859, 868, this court said:

"Even if the plaintiff and her assignor of the stock in question were not guilty of laches, we think that the question as to appellant's rights, if any, to be paid the cash value of her stock should not be determined by the courts of this state.

The only assets owned by the Des Moines and St. Louis companies, after the sales and transfers, were the cash, bonds, and stocks of the Phoenix Finance Corporation which had been obtained as consideration for such transfers. If appellant were to be paid the cash value of her stocks as of the date of the sales and transfer, it is quite possible, and perhaps even probable, that the other stockholders in the Des Moines and St. Louis companies will not receive an equal share of the assets of these corporations on distribution. It seems to us that the determination of any right of appellant to receive cash for her stocks may necessarily affect the rights of other stockholders upon distribution of the assets of these corporations, and such other stockholders are not before the court in these actions. The law seems well settled that the courts of one state will not exercise jurisdiction in the internal affairs of a foreign corporation. 14a C. J. 1327, and cases cited. Boyette v. Preston Motors Corporation, 206 Ala. 240, 89 So. 746, 18 A. L. R. 1376; Hogue v. American Steel Foundries, 247 Pa. 12, 92 A. 1073, 1074; Wallace v. Motor Products Corp. (D. C.) 15 F. (2d) 211, 213; Id. (C.C.A.) 25 F. (2d) 655; Rogers v. Guaranty Trust Co., 288 U. S. 123, 129, 53 S. Ct. 295, 77 L. Ed. 652, 656.''

Although we said in the above-quoted case that the courts of one state will not exercise jurisdiction in the internal affairs of a foreign corporation, yet, as I read the majority opinion, we are exercising jurisdiction in the internal affairs of this corporation. In other words, we are reversing, without stating so, the opinion in the Phoenix case.

In Mr. Justice Cardozo's dissent in the case of Rogers v. Guaranty Trust Co., supra, 288 U. S. 123, 150, 53 S. Ct. 295, 305, 77 L. Ed. 652, 666, 89 A. L. R. 720, he said, I quote:

''Here the organic structure of the corporation, if affected by the decree at all, will not be changed in such a way as to work substantial detriment to any stranger to the suit, but the fruits of an unjust enrichment will be put back into the treasury. I think we are at liberty to do so much, if nothing more, without waiting upon the judgment of any other court.''

In the case at bar, the majority opinion will work substantial harm to strangers not parties to this suit. It will not put into the treasury of the appellee corporation a single cent but instead it will bring about the appointment of a receiver for a corporation that is admittedly solvent and will cause damage to all stockholders and bondholders, innocent people who have not been parties to this action.

I would affirm the lower court.